JUDGE GARDEPHE

# 09 CV 10197

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

G&F LICENSING CORPORATION,

        Plaintiff,

    -against-

FIELD & STREAM LICENSES COMPANY, LLC
FIELD AND STREAM BRAND, COSTCO WHOLESALE
CORPORATION, and MOOSE CREEK INC.,

        Defendants.

-------------------------------------------------------------------------x

**ECF CASE**

Case No. CV-09-_____

<u>JURY TRIAL DEMANDED</u>



## <u>COMPLAINT</u>

Plaintiff, G&F Licensing Corporation ("Plaintiff"), by and through its attorneys Hahn & Hessen LLP, for its complaint herein alleges the following against defendants Field & Stream Licenses Company, LLC ("Field and Stream LLC"), Field and Stream Brand, Costco Wholesale Corporation ("Costco") and Moose Creek Inc. ("Moose Creek") (together with Field and Stream LLC, Field and Stream Brand and Costco, "Defendants"):

## <u>NATURE OF THE ACTION</u>

1.    Through this action, Plaintiff, as successor in interest to the original licensee, seeks to enforce a valid and binding License Agreement entered into between Field and Stream LLC's predecessor in interest, Field & Stream Licenses Company, and Gordon & Ferguson of Delaware, Inc. ("G&F of Delaware"), dated October 28, 1988 (the "License Agreement"). A true and accurate copy of the License Agreement is attached to this Complaint as Exhibit A.

2.    Pursuant to the License Agreement, Plaintiff holds the exclusive right to use certain trademarks owned by Field and Stream LLC, including trademarks associated with the Field and Stream name referenced in paragraph 15 (the "Field and Stream Marks"), in connection with the manufacture and sale of outerwear apparel (the "Outerwear"). Field and

Stream LLC purported to terminate the License Agreement by letter dated August 4, 2008 based on the alleged occurrence of an event of default relating to certain alleged actions taken, or not taken, by Gordon & Ferguson, Inc. ("G&F Inc."), a previous assignee of the License Agreement. However, as Field and Stream LLC was aware when it wrote that letter, G&F Inc. had previously assigned its rights under the License Agreement to Plaintiff.

3.    Notwithstanding that the License Agreement remains in effect, and notwithstanding that Plaintiff remains poised to use the Field and Stream Marks on an exclusive basis as provided for in the License Agreement, it appears that Defendants Field and Stream Brand, Costco and Moose Creek are each currently manufacturing, marketing, and/or selling Outerwear, and in particular men's jackets, bearing the Field and Stream Marks.    On information and belief, Field and Stream LLC has entered into one or more agreements with Field and Stream Brand which purportedly allow Field and Stream Brand to use the Field and Stream Marks in this manner, despite the fact that such use clearly violates Plaintiff's exclusive rights under the License Agreement. Similarly, on information and belief, Field and Stream LLC and/or Field and Stream Brand has entered into one or more agreements with Costco which purportedly allow Costco to use the Field and Stream Marks in connection with the advertising and sale of certain men's jackets. Finally, on information and belief, Field and Stream LLC, Field and Stream Brand, and/or Costco entered into one or more agreements with Moose Creek which purportedly allow Moose Creek to use the Field and Stream Marks in connection with the manufacture and sale of men's Outerwear, as defined in the License Agreement.  Field and Stream Brand, Costco and Moose Creek, with the knowledge and acquiescence of Field and Stream LLC, has therefore created and will continue to create a likelihood of confusion in the public's mind as to whether Plaintiff or Defendants Field and Stream Brand, Costco or Moose

Creek is exclusively authorized to use the Field and Stream Marks in connection with the manufacture, sale and/or distribution of Outerwear. Defendants' conduct has the tendency to cause the likelihood that the public will be confused, misled and deceived because such conduct creates the false impression that the Outerwear bearing the Field and Stream Marks made by or for, or sold or distributed by Defendants are manufactured, distributed and/or sold under the auspices, or sponsorship, or with the approval of Plaintiff.

4.      Plaintiff now seeks injunctive relief and damages for breach of contract, trademark infringement, contributory trademark infringement, and unfair competition under the Lanham Act (as defined below), and related state law claims, all arising out of Defendant Field and Stream LLC's improper attempt to extricate itself from the License Agreement and Field and Stream Brand's, Costco's, and Moose Creek's infringing use of the Field and Stream Marks.

## JURISDICTION AND VENUE

5.      Plaintiff asserts claims under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. (the "Lanham Act") and related claims under the common law of the State of Minnesota, and the statutory and common law of the State of New York.

6.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 (a) and (b), and 1367.

7.      Venue properly rests in this judicial district pursuant to 28 U.S.C. § 1391 (b).

## PARTIES

8.      Plaintiff G&F Licensing Corporation is a Delaware corporation with its principal place of business at 420 E. 61st St., New York, NY, 10021.

9.      On information and belief, Defendant Field and Stream LLC is a Delaware corporation with its principal place of business at 18 Kings Highway North, Westport,

Connecticut, 06880, and the successor, by merger with, Field & Stream Licenses Company, a Minnesota corporation, on or about August 25, 2006.

10. On information and belief, Defendant Field and Stream Brand is an entity owned by, run by, or affiliated with Field and Stream LLC and maintains an office at 812 SW Raintree Lane, Suite 22, Bentonville, Arkansas, 72712.

11. On information and belief, Defendant Costco is a Washington corporation with its principal place of business at 999 Lake Drive, Issaquah, Washington, 98027. On information and belief, CT Corporation System, located at 111 Eighth Avenue, New York, New York 10011, serves as Costco's Registered Agent in the State of New York.

12. On information and belief, Moose Creek Inc. ("Moose Creek") is a California corporation with its principal place of business at 20801 Currier Road, City of Industry, California, 91789.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.  Background

13. On information and belief, Field & Stream Licenses Company, a Minnesota corporation, was formerly owned by the Gordon & Ferguson Merchandising Company which was, in turn, a wholly-owned subsidiary of the Gordon & Ferguson Company. Beginning as early as 1915, entities associated with the Gordon & Ferguson Company had been selling goods under the name Field and Stream, including clothing and other items designed and marketed expressly for use in outdoor activities.

14. On information and belief, in or around January 1987, Field & Stream Licenses Company acquired from Gordon & Ferguson Company, and/or its affiliates, the rights to all of the Field and Stream trademarks then owned by Gordon & Ferguson Company. In 1988, Field & Stream Licenses Company and G&F of Delaware entered into the License Agreement which

4

granted G&F of Delaware the exclusive right to exploit the Field and Stream Marks in the manufacture and sale of Outerwear.

**B.**     **Use of the Field and Stream Marks under the License Agreement**

15.     Under the terms of the License Agreement, G&F of Delaware was granted the exclusive right, license, and privilege to use the following registered Field and Stream Marks, as well as those listed in Exhibit A to the License Agreement, in connection with the manufacture and sale of certain "Licensed Products" anywhere in the world for the duration of the contract:

| Registration No. | Trademark |
| --- | --- |
| 1,360,646 | FIELD & STREAM |
| 1,360,645 | FIELD AND STREAM |
| 1,375,862 | FIELD AND STREAM |
| 740,945 | FIELD & STREAM |
| 217,643 | FIELD AND STREAM |

True and accurate copies of the Registrations are attached hereto as Exhibit B.

16.     In particular, pursuant to the License Agreement, Field & Stream Licenses Company, as "Licensor," granted G&F of Delaware, as "Licensee," the right to exploit the Field and Stream Marks in the manufacture and sale of Outerwear.  The License Agreement defines Outerwear as "coats, jackets, blousons, vests, anoraks, parkas, ski jackets, ski bibs and ski pants, but only if such apparel is not designed and/or sold for active use in hunting or fishing." Furthermore, the License Agreement states that Outerwear shall also include "any item of Outerwear that is bought by and carried in a department store Outerwear department."  The definition of Outerwear specifically excludes certain categories of apparel including apparel that

is designed and/or sold for active use in hunting or fishing and rainwear.[1]  See Exhibit A at § I(B).

17.     Under the terms of the License Agreement, the Licensee is obligated to pay Licensor an annual license fee in connection with its use of the Field and Stream Marks.  The fees are calculated as the greater of (i) a payment calculated based on the percentage of the profits earned by the Licensee during a given calendar year; or (ii) a minimum license fee payment as explicitly set forth in the License Agreement.  See Exhibit A at § VI(C).

18.     However, once the total amount of license fees paid with respect to all calendar years reaches an aggregate amount of $1.5 million, the License Agreement provides that "for all calendars [sic] years thereafter, the annual license fee payable hereunder shall be One Dollar ($1.00) per year."  See Exhibit A at § VI(D).

19.     Under the terms of the License Agreement, once $1.5 million in licensing fees is paid by the Licensee to Licensor, the Licensee's rights thereunder become freely assignable such that the Licensee need not seek the consent of Licensor prior to assignment or other transfer of its rights.  In particular, the License Agreement states:

> Licensee may not assign, sublicense, or otherwise transfer any rights or permit any use of the Licensed Marks, or any Trademark or registration to a security interest under Section VIII without the prior written consent of Field and Stream, nor may Licensee further encumber the trademarks or registrations referred to in Section VIII, unless and until the license fees set forth in Section VI in the amount of One Million Five Hundred Thousand Dollars ($1,500,000) have been paid.

See Exhibit A at § XII(B).

---

[1]     Rainwear is defined to include "without limitation, raincoats and rainsuits (whether of fabric, plastic, PVC or any other material)."

20.     On information and belief, the aggregate sum of license fees, owed by G&F of Delaware to Field & Stream Licenses Company, reached $1.5 million at or around December 31, 1991.

21.     On information and belief, G&F of Delaware made aggregate payments of license fees to Field & Stream Licenses Company reaching, or exceeding, $1.5 million.  Accordingly, G&F of Delaware earned the right to freely assign, sublicense or otherwise transfer the License Agreement without the consent of Licensor.

**C.     G&F of Delaware's Performance Under the License Agreement**

22.     Pursuant to the terms of the License Agreement, G&F of Delaware continuously marketed and sold Outerwear bearing the Field and Stream Marks until at least December 31, 2005.  During this time period, G&F of Delaware made annual license payments to Field & Stream Licenses Company in accordance with the terms of the License Agreement.

23.     In or around February 2006, G&F of Delaware entered into an asset purchase agreement with G&F Inc., pursuant to which G&F Inc. purchased certain assets of G&F of Delaware, including G&F of Delaware's exclusive right, as set forth in the License Agreement, to exploit the Field and Stream Marks in the manufacture and sale of Outerwear.

24.     As G&F of Delaware had made aggregated license payments to Field & Stream Licenses Company exceeding $1.5 million, it had the right to transfer its interests under the License Agreement to G&F Inc. without the prior consent of Field & Stream Licenses Company.  As a result, G&F of Delaware's transfer of its rights under the License Agreement to G&F Inc. was at all times valid and proper.

25.     On or around March 13, 2006, Field & Stream Licenses Company, confirmed via letter that, because G&F of Delaware had made aggregate payments of $1.5 million in licensing fees, it was free to transfer its interests under the License Agreement without Field & Stream

Licenses Company's consent. A true and accurate copy of the March 13, 2006 letter is attached hereto as Exhibit C.

26.     On or around July 6, 2006, G&F Inc. entered into a factoring agreement with Capital Factors LLC, now known as Capital Business Credit LLC ("CBC"), pursuant to which CBC gained a security interest in G&F Inc.'s rights under the License Agreement.

27.     On information and belief, in July 2006, G&F Inc., while having no obligation to do so, gave notice to Field & Stream Licenses Company of the collateral assignment of the License Agreement to CBC.

**D.    Field and Stream LLC Acquires the License Agreement from the Licensor and Acknowledges the Assignment To G&F Inc., Plaintiff's Predecessor In Interest**

28.     On information and belief, on or around August 25, 2006, Field & Stream Licenses Company was purchased by a group of outside investors (the "Investor Group"), who also owned or caused to be formed Defendant Field and Stream LLC.

29.     On information and belief, on or about August 25, 2006, Field & Stream Licenses Company was merged with and into Field and Stream LLC.

30.     The United States Patent and Trademark Office's online trademark assignment database indicates that Field and Stream LLC became the owner of the following Field and Stream Marks as a result of its merger: (1) "Field & Stream" (Reg. No. 1,360,646); (2) "Field and Stream" (Reg. No. 1,360,645); (3) "Field and Stream" (Reg. No. 1,375,862); and (4) "Field and Stream" (Reg. No. 2,217,643). Upon information and belief, Field and Stream LLC also became the owner of the mark "Field and Stream" (Reg. No. 2,217,643) as a result of the merger.

31.     On information and belief, the Investor Group was interested in pursuing new relationships with manufacturers and retailers, including the development of new sales and

distribution chains through Web-based partnerships.  In particular, the Investor Group indicated its intent to "hand-pick" any future licensees of the Field and Stream Marks.

32.     On information and belief, at the times of the acquisition and when Field and Stream LLC acquired the Field and Stream Marks, the new Investor Group was aware, or should have been aware, that pursuant to the terms of the License Agreement, G&F Inc. held the exclusive right to manufacture, market, and sell Outerwear (as defined in the License Agreement) in exchange for a $1.00/year annual licensing fee.

33.     On information and belief, G&F Inc., on or about January 10, 2007, sent a check dated January 10, 2007 bearing check no. 001016 drawn on its Citibank checking account no. 021000089: 74446136 in the amount of $1.00 to Field and Stream LLC's affiliate, Field and Stream Holdings, LLC ("Field and Stream Holdings"), representing the licensing fee payable under the License Agreement for the year ending December 31, 2006 (the "2006 Licensing Fee Check").

34.     On information and belief, on or about January 31, 2007 Field and Stream Holdings, or another entity associated with Field and Stream LLC, cashed the 2006 Licensing Fee Check on behalf of Field and Stream LLC acknowledging G&F Inc.'s rights under the License Agreement.  A true and accurate copy of the paid 2006 Licensing Fee Check is annexed hereto as Exhibit D.

**E.     Plaintiff Acquires and Field and Stream LLC Acknowledges
        Plaintiff's Rights Under the License Agreement**

35.     On or around March 30, 2007, Plaintiff acquired G&F Inc.'s exclusive rights under the License Agreement.  Prior to this time, G&F Inc. continuously marketed and sold Outerwear bearing the Field and Stream Marks.

36.    On or around March 30, 2007, Plaintiff granted a sublicense to G&F Inc., allowing G&F Inc., on a non-exclusive basis, to exploit the Field and Stream Marks in the manufacture and sale of Outerwear.

37.    On or around March 30, 2007, Plaintiff and CBC entered into a loan agreement pursuant to which CBC was granted a security interest in Plaintiff's rights under the License Agreement.

38.    No consent from Field and Stream LLC was required, or sought, to effectuate Plaintiff's acquisition of G&F Inc.'s acknowledged rights under the License Agreement, grant of a sublicense to G&F Inc., or grant of a security interest to CBC of Plaintiff's rights under the License Agreement.

39.    While under no obligation to do so at law or under the License Agreement, on June 11, 2007, counsel for Plaintiff sent notification to Field and Stream Holdings and its counsel (the parties entitled to receive notifications required under the License Agreement) of the transfer to Plaintiff of G&F Inc.'s rights under the License Agreement. The letter provides that "[t]he [L]icense [A]greement between Field & Stream Licenses Company and Gordon & Ferguson of Delaware, Inc., as same was transferred to Gordon & Ferguson, Inc., has been assigned to G&F Licensing Corporation." A true and accurate copy of the June 11, 2007 letter is attached hereto as Exhibit E.

40.    On or about July 18, 2007, notwithstanding that Field and Stream Holdings and its counsel had been sent notification of the transfer of the License Agreement to Plaintiff, counsel for Field and Stream LLC sent a letter to G&F of Delaware -- not Plaintiff -- to "advise" it of certain alleged provisions of the License Agreement (the "July 18 Letter"). A true and accurate copy of the July 18 Letter is attached hereto as Exhibit F.

41.     The July 18 Letter purports to set forth a number of "limitations" supposedly contained in certain alleged, unenumerated provisions of the License Agreement.  In particular, the July 18 Letter states that:

- given the "wide variety of fabrics that are presently water resistant," Field and Stream LLC planned to "construe[] broadly the 'rainwear' exclusion to the definition of outerwear as set forth in . . . the License Agreement";

- the "broadly worded" language of the License Agreement requires the licensee to "produce high quality goods that are tastefully promoted and sold through "prestigious retailers"; and

- sales of Licensed Products in discount or other mass merchants would not be tolerated.[2]

42.     These "limitations" are not included in the terms of the License Agreement and, on information and belief, were not modifications agreed to by G&F of Delaware, G&F Inc., or Plaintiff in writing or otherwise.  Rather, on information and belief, the July 18 Letter was sent by Field and Stream LLC in an attempt to unilaterally (and improperly) change the terms of the License Agreement to chill Plaintiff's ability to reap the full benefits under the License Agreement, and to set the stage for a premeditated future attempt by Field and Stream LLC to terminate the License Agreement.

43.     Accordingly, by letter dated August 16, 2007, Plaintiff's counsel, among other things, reminded Field and Stream LLC that Plaintiff is the owner of the License Agreement, rejected the attempt to unilaterally modify the express terms of the License Agreement, and agreed to comply with all provisions of the License Agreement.  A true and accurate copy of the August 16, 2007 letter is annexed hereto as Exhibit G.

---

[2]     The July 18 Letter further notes that the new owners of the Field and Stream Marks "had devoted significant capital to hire a premier branding firm, to engage a cutting edge, interactive web site developer, and to develop a detailed long term brand development plan," and warned that it was "willing to pursue all available legal remedies to protect its very valuable asset."  This was the first threat of litigation hurled by Field and Stream LLC at Plaintiff, which was followed by many other such threats.

44.     Plaintiff, on December 31, 2007, sent a Citibank bank check dated December 31, 2007 bearing check no. 419864676 to Field and Stream Holdings, representing the licensing fee payable under the License Agreement for the year ending December 31, 2007 (the "2007 Licensing Check"). A true and accurate copy of the 2007 Licensing Check and cover letter is annexed as Exhibit H.

45.     On information and belief, on or about February 2, 2008, Field and Stream Holdings, or another entity associated with Field and Stream LLC, cashed the 2007 Licensing Fee Check on behalf of Field and Stream LLC acknowledging Plaintiff's rights under the License Agreement.

**F.     Field and Stream LLC Repudiates the License Agreement**

46.     On information and belief, on or about April 29, 2008, Field and Stream LLC hired an entity called Graj & Gustavson to help it develop an updated marketing platform for the Field and Stream brand in violation of Plaintiff's rights under the License Agreement. Prior to this time, Plaintiff, through its sublicensee, G&F Inc., continuously marketed and sold Outerwear bearing the Field and Stream Marks.

47.     By letter dated August 4, 2008, Field and Stream LLC once again acknowledged the assignment of the License Agreement to Plaintiff, but it purported to terminate the License Agreement on the basis of the alleged occurrence of an event of default under the License Agreement (the "Termination Letter"). In particular, the Termination Letter alleged that there had been an "admission in writing by Gordon & Ferguson of its inability to pay its debts generally as they become due or the taking of corporate action by Gordon & Ferguson in furtherance of such action" as set forth in Section X(B)(4) of the License Agreement. A true and accurate copy of the Termination Letter is attached hereto as Exhibit I.

48.     The Termination Letter failed to specifically identify which "Gordon & Ferguson" entity was being referred to -- G&F of Delaware or G&F Inc. -- and, more importantly, it did not set forth any date when "Gordon & Ferguson" supposedly made the alleged admission.   However, an e-mail from Jaggi Singh dated July 15, 2008 to Field and Stream LLC advised that "Gordon & Ferguson has ceased operations as of last month [i.e., June 2008]."   A true and accurate copy of this e-mail is attached hereto as Exhibit J.

49.     Field and Stream LLC had no right to terminate the License Agreement owned by Plaintiff because of the alleged admission contained in the July 15, 2008 e-mail, or any other admission by Plaintiff's immediate or prior predecessors in interest, or sublicensee, to the License Agreement.   As Field and Stream LLC well knew and specifically acknowledged, Plaintiff was duly assigned the License Agreement in 2007.   Plaintiff never made any admission concerning its operations, and committed no event of default under the License Agreement. Thus, the purported termination of the License Agreement by Field and Stream LLC because of the alleged statements made by "Gordon & Ferguson" following the assignment of the License Agreement to Plaintiff was unjustified and improper.

50.     On or around August 15, 2008, CBC, the entity that holds a security interest in the License Agreement owned by Plaintiff and presently owns all of Plaintiff's stock, responded to the Termination Letter through its counsel.   In particular, CBC noted that Plaintiff was the current Licensee, that the attempt by Field and Stream LLC to terminate the License Agreement based on the alleged activities of G&F Inc. was therefore inappropriate, and that CBC and Plaintiff were continuing to work together to enhance the value of Plaintiffs' rights under the License Agreement.   A true and accurate copy of the August 15, 2008 letter is attached hereto as Exhibit K.

51.    Field and Stream LLC has refused to withdraw the Termination Letter and has repeatedly threatened to commence litigation against both Plaintiff and CBC if Plaintiff used the Field and Stream Marks in connection with the manufacture, sale or distribution of Outerwear.

52.    Nevertheless, on or about January 7, 2009, Plaintiff sent a letter and check for $10.00 to Field and Stream Holdings.  The letter stated that the check was meant to serve as payment in full of the license fees owed for the year ended December 31, 2008 and going forward through December 31, 2017.  This payment was made pursuant to, and in accordance with the terms of the License Agreement.

53.    On or about January 19, 2009, Field and Stream LLC returned the $10.00 check under a cover letter asserting that, because of an event of default, it considered the License Agreement terminated.  Again, Field and Stream LLC made threats of litigation against Plaintiff and CBC at or about this time.  True and accurate copies of the January 19, 2009 letter and returned check are annexed hereto as Exhibit L.

**G.    The Field and Stream Brand Launch**

54.    On or around July 14, 2009, Field and Stream LLC filed an application with the U.S. Patent & Trademark Office indicating an intent to use the mark "Field and Stream Brand" on "[m]en's outdoor clothing and sportswear apparel, namely, jackets, shirts, pants, shorts, hooded jackets, waxed jackets, flannel jackets, canvas jackets, pullovers, padded vests, trigger vests, water resistant rainwear, jerseys, t-shirts, polo shirts, hats, [and] caps."

55.    On information and belief, in or around August 2009, defendant Field and Stream Brand launched a website, http://www.fieldandstreambrand.com, through which various products bearing the Field and Stream Marks, or marks that are confusingly similar or identical to the Field and Stream Marks, are available for purchase (the "Field and Stream Brand Website").

56.     The Field and Stream Brand Website homepage includes a link that directs potential consumers to apparel that is categorized as "Mens [sic] Outerwear" (the "Outerwear Page").  As of December 15, 2009, the Outerwear Page advertised nine different varieties of men's jackets available for purchase online including: "The Overland Long," "The Trigger Vest," "The Victor," "The Overland Short," "The Roosevelt Jacket," "The Grumpy Jacket," "The Trigger Jacket," "The Buddy Love Bomber," and "The Row Back Jacket" (collectively, the "Field and Stream Brand Jackets").  A true and correct copy of the Outerwear Page is attached hereto as Exhibit M.

57.     Each of the Field and Stream Brand Jackets is marketed and sold by Field and Stream Brand as Men's Outerwear.

58.     Each of the Field and Stream Brand Jackets qualifies as Outerwear under the terms of the License Agreement.

59.     Consumers may purchase the Field and Stream Brand Jackets through the Field and Stream Brand Website.  Following such purchase, Field and Stream Brand causes the orders to be shipped to an address specified by the consumer.

60.     Field and Stream Brand has caused Field and Stream Brand Jackets to be shipped to consumers located in New York State.  For example, on August 21, 2009, in connection with an order placed through the Field and Stream Brand Website, Field and Stream Brand caused three men's jackets[3] to be shipped to Glenn Schwartz, 201 East 35th Street, New York, New York, 10016.  A true and accurate copy of the receipt for the purchase of the three men's jackets is attached hereto as Exhibit N.  Each of these jackets qualifies as Outerwear under the terms of the License Agreement, and each bears a Field and Stream trademark.

---

[3]     The three men's jackets included one (1) Overland Short jacket, one (1) Buddy Love Bomber jacket, and one (1) Row Back Jacket, each of which were sized large.

61.     On information and belief, Field and Stream Brand will continue to cause Field and Stream Brand Jackets to be shipped to consumers located in New York State.

62.     On information and belief, Field and Stream Brand has the capability to cause its products to be shipped to each of the fifty states encompassing the United States.

63.     Field and Stream Brand, through the Field and Stream Brand Website, also offers consumers the ability to order a paper copy of its Fall/Winter catalog for 2009-2010 (the "Field and Stream Brand Catalog").  For instance, on or around August 28, 2009, Field and Stream Brand, at the request of Glenn Schwartz, shipped a copy of the Field and Stream Brand Catalog to 201 East 35th Street, New York, New York, 10016.

64.     On information and belief, Field and Stream Brand will ship the Field and Stream Brand Catalog to consumers in each of the fifty states encompassing the United States.

65.     The Field and Stream Brand Catalog provides consumers a telephone number. On information and belief, consumers can order Field and Stream Brand apparel, including the Field and Stream Brand Jackets by calling this telephone number and providing an address for delivery.

66.     Field and Stream Brand's marketing and sale of the Field and Stream Brand Jackets on the Field and Stream Brand Website and through the Field and Stream Brand Catalog constitutes the use, manufacture, and/or sale in interstate commerce of Outerwear bearing the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks.

67.     On information and belief, Field and Stream Brand has been licensed by Field and Stream LLC to manufacture, market, and/or sell products bearing the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks.

68.     On information and belief, Field and Stream Brand has been licensed by Field and Stream LLC to manufacture, market and/or sell men's jackets bearing the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks.

69.     On information and belief, Field and Stream Brand has been licensed by Field and Stream LLC to manufacture, market, and/or sell Outerwear other than men's jackets bearing the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks.

70.     On information and belief, Field and Stream Brand, by virtue of its relationship with Field and Stream LLC, knew or should have known that the right to use the Field and Stream Marks in connection with the marketing and sale of Outerwear, including men's jackets, is held exclusively by Plaintiff.

71.     On information and belief, Field and Stream Brand, by virtue of its relationship with Field and Stream LLC, knew or should have known that any sale of Outerwear, including men's jackets, would infringe upon Plaintiff's rights as exclusive licensee.

72.     On information and belief, Field and Stream LLC induced Field and Stream Brand to manufacture, market, and/or sell Outerwear, including men's jackets, with the Field and Stream Marks, or with confusingly similar or identical marks.

73.     On information and belief, Field and Stream LLC knew or should have known that such use would constitute trademark infringement of Plaintiff's rights as exclusive licensee under the License Agreement.

**H.     Sale of Infringing Goods by Costco**

74.     Costco is currently, and has been, marketing and selling goods, including men's jackets, bearing the Field and Stream Marks at stores located in New York State.

75.     Some of the men's jackets bearing the Field and Stream Marks, available for purchase at Costco stores, constitute Outerwear under the terms of the License Agreement.  For example, on October 25, 2009, Glenn Schwartz purchased among other things, three men's jackets bearing Field and Stream Marks at the Costco store located at 20 Stew Leonard Drive, Yonkers, NY, 10710 (the "Costco Jackets").  A true and accurate copy of the receipt for the purchase of the Costco Jackets from Costco is attached hereto as Exhibit O.

76.     On information and belief, goods bearing the Field and Stream Marks, including men's jackets, are available at Costco store locations in states other than New York.

77.     On information and belief, some of the men's jackets bearing the Field and Stream Marks, available for purchase at Costco store locations in states other than New York constitute Outerwear under the terms of the License Agreement.

78.     Costco's marketing and sale of certain men's jackets bearing the Field and Stream Marks constitutes the use, manufacture, and/or sale in interstate commerce of Outerwear bearing the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks.

79.     On information and belief, Costco has been licensed by Field and Stream LLC and/or Field and Stream Brand to market and/or sell products bearing the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks.

80.     On information and belief, Costco has been licensed by Field and Stream LLC and/or Field and Stream Brand to market and/or sell men's jackets bearing the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks.

81.     On information and belief, Costco knew or should have known that the exclusive right to use the Field and Stream Marks in connection with the marketing and sale of Outerwear, including men's jackets, is held by Plaintiff.

82.     On information and belief, Costco knew or should have known that its sale of Outerwear, including men's jackets, would infringe upon Plaintiff's rights as exclusive licensee.

## I.     Manufacture and Sale of Infringing Goods by Moose Creek

83.     Moose Creek is currently, and has been, manufacturing and selling clothing apparel, including men's jackets, bearing the Field and Stream Marks to wholesale distributors such as Costco.

84.     The tags included on each of the three Costco Jackets purchased by Glenn Schwartz on October 25, 2009 from the Costco store located at 20 Stew Leonard Drive, Yonkers, NY, 10710 indicates that (1) "Field & Stream® is a registered trademark of, and licensed by, Field & Stream Licenses Company, 18 Kings Highway, North Westport, CT 06880 USA 203-221-0050" and (2) the Costco Jackets were "[m]anufactured under license" and provides the following web address for the manufacturer: www.moosecreekinc.com (the "Moose Creek Website").

85.     The Moose Creek Website includes a link that directs potential wholesale consumers to apparel that is categorized as "2010 Men's Outerwear" (the "Moose Creek Outerwear Page").  As of December 15, 2009, the Moose Creek Outerwear Page advertised different varieties of men's jackets available for purchase including the "Utility" Jacket and the "Dakota II" Jacket.  A true and correct copy of the Moose Creek Outerwear Page is attached hereto as Exhibit P.  The Moose Creek Website also advertises different varieties of men's heavyweight shirts that can be worn as jackets including the "Brawny" Shirt.

86.    On information and belief, the three items purchased by Glenn Schwartz from Costco have been identified as (1) either two "Utility" or "Dakota II" Jackets, both in size large and (2) one "Brawny" Shirt in size extra large.

87.    On information and belief, the Costco Jackets were manufactured, marketed and sold by Moose Creek to Costco as Men's Outerwear and qualify as such under the terms of the License Agreement.

88.    On information and belief, authorized wholesale distributors may purchase Outerwear bearing the Field and Stream Marks directly through the Moose Creek Website or by otherwise downloading an order form from the Moose Creek Website and faxing such form to Moose Creek's corporate headquarters.   Following such purchase, Moose Creek causes the orders to be shipped to an address specified by the wholesale distributor.

89.    On information and belief, Moose Creek has caused and will continue to cause Outerwear, including men's jackets, bearing the Field and Stream Marks to be shipped to wholesale distributors located in New York State.

90.    On information and belief, Moose Creek has the capability to cause its products to be shipped to each of the fifty states encompassing the United States.

91.    Moose Creek's manufacture, marketing and sale of Outerwear bearing the Field and Stream Marks on the Moose Creek Website and through the order form available on the Moose Creek Website constitutes the use, manufacture and/or sale in interstate commerce of Outerwear bearing the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks.

92.    On information and belief, Moose Creek has been licensed by Field and Stream LLC to manufacture, market and/or sell products bearing the Field and Stream Marks or

confusingly similar or identical to the Field and Stream Marks to wholesale distributors, including Costco.

93.     On information and belief, Moose Creek has been licensed by Field and Stream LLC and/or Field and Stream Brand to manufacture, market and/or sell men's jackets bearing the Field and Stream Marks or confusingly similar or identical to the Field and Stream Marks to wholesale distributors, including Costco.

94.     On information and belief, Moose Creek has been licensed by Field and Stream LLC and/or Field and Stream Brand to manufacture, market and/or sell Outerwear other than men's jackets bearing the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks to wholesale distributors, including Costco.

95.     On information and belief, Moose Creek knew or should have known that the exclusive right to use the Field and Stream Marks in connection with the manufacture, marketing and/or sale of Outerwear, including men's jackets, is held by Plaintiff.

96.     On information and belief, Moose Creek knew or should have known that its manufacture, marketing and/or sale of Outerwear, including men's jackets, would infringe upon Plaintiff's rights as exclusive licensee.

**J.     Negotiations Between Plaintiff and Field and Stream LLC and Commencement of Action**

97.     Following Field and Stream LLC's wrongful termination of the License Agreement, Plaintiff entered into good faith negotiations with Field and Stream LLC to resolve all disputes concerning Plaintiff's rights and obligations under the License Agreement.

98.     To date, Plaintiff has refrained from commencing this litigation in an effort to facilitate negotiations with Field and Stream LLC and hopefully resolve this matter amicably without judicial intervention.

99.    Despite Plaintiff's good faith efforts to resolve this dispute without court intervention, all hope that an amicable resolution could be reached ended in late October 2009.

100.    Plaintiff has at all times clearly advised Field and Stream LLC that the License Agreement remains valid and that it intends to assert and exploit its rights as Licensee unless a mutually acceptable agreement could be reached by the parties.

101.    Now that the parties have been unable to reach an agreement, Plaintiff, under the express terms of the License Agreement and applicable law, hereby, among other things, brings infringement claims relating to the Field and Stream Marks.    Specifically, the License Agreement authorizes this action as it expressly provides, in relevant part:

> In the event that Licensee learns of any infringement or limitation of the [Field and Stream] Marks or of any use by any person [which includes Field & Stream LLC] of a trademark which has caused confusion, mistake or deception with respect to the Licensed Marks, in connection with products licensed under the [Field and Stream] Marks, it shall promptly notify [Field and Stream] in writing and if in Licensee's reasonable opinion such infringement, or use also constitutes an infringement of the rights herein granted to Licensee, Licensee shall specifically so state in its notice.  In such latter case, if action to stop such believed infringement is not taken by [Field and Stream LLC] within thirty (30) days after the date of its receipt of such notice from Licensee, Licensee shall have the right to prosecute such trademark infringement at Licensee's sole expense, but in such event Licensee will keep [Field and Stream LLC] advised in advance of its intention in such action, and consult with [Field and Stream LLC] with respect thereto, and will not settle such action without [Field and Stream LLC's] written approval (which approval shall not be unreasonably withheld).  (emphasis added).

See Exhibit A at § XI(A) (emphasis added).

102.    Because Field and Stream LLC is one of the infringers, providing any notice to it under the above provision would have been futile and is excused because Field and Stream LLC would not commence litigation against itself or Field and Stream Brand, Costco or Moose Creek

whose alleged rights derive from and through Field and Stream LLC. In any event, Field and Stream LLC has been on written notice of Plaintiff's claims concerning Field and Stream LLC's breach of the License Agreement and Defendants' unauthorized use of the Field and Stream Marks for more than thirty days.

**K.**     **Field and Stream LLC's and Field and Stream Brand's Bad Faith**

103.   Field and Stream LLC's and Field and Stream Brand's conduct, as alleged above, is open, notorious, hostile and in bad faith. These Defendants knowingly are using the Field and Stream Marks in violation of the License Agreement. Because the Field and Stream Marks these Defendants are exploiting are identical to the Field and Stream Marks exclusively licensed to Plaintiff, and Defendants' exploitation is in connection with products that fall squarely within the term Outerwear as defined under the License Agreement, Defendants have no justification for their wrongful conduct. Indeed, Defendants wrongfully declared a default under the License Agreement to violate Plaintiff's rights. Since Defendants have refused to cease their wrongful conduct and have repeatedly threatened to sue Plaintiff and CBC if they exercised rights under the License Agreement, Plaintiff is entitled to recover exemplary damages and attorneys' fees from both Field and Stream LLC and Field and Stream Brand.

**FIRST CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT**
**(as against all Defendants)**

104.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 103 as through fully set forth herein.

105.   The License Agreement is a valid and binding contract pursuant to which Plaintiff, by assignment, is the exclusive Licensee of the right to use the Field and Stream Marks in connection with the manufacture and sale of Outwear.

106.    By reason of the foregoing, Plaintiff requests that the Court issue a declaratory judgment upholding the validity of the License Agreement and assignment of all rights under the License Agreement to Plaintiff and declaring that Plaintiff, to the exclusion of all others including Field and Stream LLC, Field and Stream Brand, Costco and Moose Creek, possesses the right to manufacture and sell Outerwear as defined in the License Agreement.

**SECOND CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(as against Defendant Field and Stream LLC)**

107.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 106 as though fully set forth herein.

108.    The License Agreement is a valid and binding contract pursuant to which Plaintiff, by assignment, is the exclusive licensee of the right to use the Field and Stream Marks in connection with the manufacture and sale of Outerwear products.

109.    Field and Stream LLC deliberately and willfully breached the License Agreement when it wrongfully terminated the License Agreement, refused Plaintiff's attempts to pay annual licensing fees or when, on information and belief, it granted a license allowing Field and Stream Brand, Costco and Moose Creek to use the Field and Stream Marks, or trademarks confusingly similar or identical to the Field and Stream Marks, in the manufacture and sale of Outerwear products.

110.    As a result of Field and Stream LLC's breach, Plaintiff has been, and continues to be, damaged in an unknown amount equal at least to the dollar value of Field and Stream Brand's, Costco's and Moose Creek's sales of Outerwear products bearing the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks.

## THIRD CLAIM FOR RELIEF
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (as against Defendant Field and Stream LLC)

111.    Plaintiff repeats and realleges each and every allegation set forth in  paragraphs 1 through 110 as though fully set forth herein.

112.    Pursuant to Minnesota law, which governs the License Agreement, the License Agreement contains an implied covenant of good faith and fair dealing requiring that Field and Stream LLC not unjustifiably hinder the Licensee's performance of the contract.

113.    Field and Stream LLC's attempt to unilaterally change the terms of the License Agreement through the July 18 Letter was a bad faith and unjustified attempt to hinder Plaintiff's performance under the Agreement.

114.    Field and Stream LLC's knowingly improper termination of the License Agreement was a bad faith and unjustified attempt to hinder Plaintiff's performance under the Agreement.

115.    As a result of Field and Stream LLC's breach, Plaintiff has been, and continues to be, damaged in an unknown amount equal at least to the dollar value of Field and Stream Brand's, Costco's and Moose Creek's sales of Outerwear products.

## FOURTH CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT UNDER SECTION 32 OF THE LANHAM ACT
### (as against all Defendants)

116.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 115 as though fully set forth herein.

117.    Plaintiff is the exclusive licensee of the rights to use, manufacture, and sell Outerwear bearing the Field and Stream Marks.

118.    Without Plaintiff's consent, and in violation of 15 U.S.C. § 1114, Defendants have used, and are using, the Field and Stream Marks, or trademarks confusingly similar or

identical to the Field and Stream Marks, in connection with the design, sale, and/or advertising of products, including men's jackets, which constitute Outerwear under the License Agreement.

119.   Defendants' use of the Field and Stream Marks is likely to cause confusion, mistake and deception as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship or approval of the Outerwear being marketed by Defendants.

120.   Defendants' actions were and continue to be exceptional, willful, intentional, and in bad faith.

121.   Defendants' actions have caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## UNFAIR COMPETITION UNDER SECTION 43(A) OF THE LANHAM ACT
### (as against all Defendants)

122.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 121 as though fully set forth herein.

123.   In violation of 15 U.S.C. § 1125(a), Defendants have used the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks in connection with the sale or advertising of Outerwear in a manner that is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendants, or Outerwear products designed and/or sold by Defendants, with Plaintiff, or as to the origin, sponsorship or approval of the Outerwear being marketed by Defendants.

124.   Defendants' actions were and continue to be exceptional, willful, intentional, and in bad faith.

125.   Such conduct has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
## TRADEMARK DILUTION UNDER SECTION 43(C) OF THE LANHAM ACT
### (as against all Defendants)

126.    Plaintiff repeats and realleges each and every allegation set forth in  paragraphs 1 through 125 as though fully set forth herein.

127.    The Field and Stream Marks are distinctive and famous and have been used by Plaintiff and its predecessors in interest in connection with the promotion and sale of Outerwear products in the United States for decades.

128.    Subsequent to the Field and Stream Marks having become famous, Defendants' acts constitute use in commerce of the famous Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks.

129.    Defendants' use of the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks has diluted the distinctive quality of the marks in violation of section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

130.    Defendants' actions set forth above were and continue to be exceptional, willful, intentional, and in bad faith.

131.    Such conduct has caused and is causing irreparable injury and damage to the good will symbolized by the Field and Stream Marks, and particularly as used in connection with Outerwear, leaving Plaintiff with no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF
## CONTRIBUTORY TRADEMARK INFRINGEMENT
## UNDER SECTIONS 32, 43(A) AND 43(C) OF THE LANHAM ACT
### (as against Defendant Field and Stream LLC)

132.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 131 as though fully set forth herein.

133.   Field and Stream LLC was aware that Plaintiff was the exclusive licensee of the rights to use the Field and Stream Marks in connection with the manufacture and sale of Outerwear.

134.   On information and belief, Field and Stream LLC entered into one or more agreements with Field and Stream Brand, Costco and Moose Creek allowing Field and Stream Brand, Costco and Moose Creek to use the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks in connection with the manufacture and sale of certain items of Outerwear including, but not limited to, men's jackets.

135.   On information and belief, Field and Stream LLC knew that Field and Stream Brand, Costco and Moose Creek are using the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks in connection with the manufacture and sale of certain items of Outerwear including, but not limited to, men's jackets.

136.   On information and belief, Field and Stream LLC intentionally induced Field and Stream Brand, Costco and Moose Creek to use the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks in connection with the manufacture and sale of certain items of Outerwear including, but not limited to, men's jackets, and thereby infringed on Plaintiff's rights as exclusive licensee of the Field and Stream Marks.

### EIGHTH CLAIM FOR RELIEF
### DECEPTIVE TRADE PRACTICES UNDER
### N.Y. GENERAL BUSINESS LAW § 349
#### (as against all Defendants)

137.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 136 as though fully set forth herein.

138.   Defendants' activities constitute deceptive trade practices in the conduct of business, trade, or commerce in violation of New York General Business Law § 349.

139.    Such conduct has caused and is causing irreparable consumer injury and harm to the public interest and damage to the good will symbolized by the Field and Stream Marks, particularly as used in connection with Outerwear, leaving Plaintiff with no adequate remedy at law.

**NINTH CLAIM FOR RELIEF**
**INJURY TO BUSINESS REPUTATION/DILUTION UNDER**
**N.Y. GENERAL BUSINESS LAW § 360-1**
**(as against all Defendants)**

140.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 139 as though fully set forth herein.

141.    The Field and Stream Marks are distinctive and famous and have been used by Plaintiff and its predecessors in interest in connection with the promotion and sale of Outerwear products in the United States for decades.

142.    Defendants' use of the Field and Stream Marks has diluted, and will continue to dilute, the distinctive quality of the Field and Stream Marks in violation of New York General Business Law § 360-1.

143.    Such conduct has caused and is causing irreparable consumer injury and harm to the public interest and injury and damage to the good will symbolized by the Field and Stream Marks, particularly as used in connection with Outerwear, leaving Plaintiff with no adequate remedy at law.

**TENTH CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
**UNDER NEW YORK COMMON LAW**
**(as against all Defendants)**

144.    Plaintiff repeats and realleges each and every allegation set forth in  paragraphs 1 through 143 as though fully set forth herein.

145.    Defendants' activities constitute unfair competition and trademark infringement under the common law of New York.

146.    Such conduct has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

### ELEVENTH CLAIM FOR RELIEF
### CONTRIBUTORY TRADEMARK INFRINGEMENT
### UNDER NEW YORK COMMON LAW
#### (as against Defendant Field and Stream LLC)

147.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 146 as though fully set forth herein.

148.    Field and Stream LLC was aware that Plaintiff was the exclusive licensee of the rights to use the Field and Stream Marks in connection with the manufacture and sale of Outerwear.

149.    On information and belief, Field and Stream LLC entered into one or more agreements with Field and Stream Brand, Costco and Moose Creek allowing Field and Stream Brand, Costco and Moose Creek to use the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks in connection with the manufacture and sale of certain items of Outerwear including, but not limited to, men's jackets.

150.    On information and belief, Field and Stream LLC knew that Field and Stream Brand, Costco and Moose Creek using the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks in connection with the manufacture and sale of certain items of Outerwear including, but not limited to, men's jackets.

151.    On information and belief, Field and Stream LLC intentionally induced Field and Stream Brand, Costco and Moose Creek to use the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks in connection with the

manufacture and sale of certain items of Outerwear including, but not limited to, men's jackets, and thereby infringed on Plaintiff's rights as exclusive licensee of the Field and Stream Marks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that relief in its favor be afforded as follows:

      A.     That judgment be entered:

           (i)     that upholds the validity of, and declares the rights and obligations of Plaintiff and Defendants in respect of, the License Agreement.

           (ii)     that Defendant Field and Stream LLC has breached the License Agreement;

           (iii)     that Defendant Field and Stream LLC has breached the implied duty of good faith and fair dealing associated with the License Agreement;

           (iv)     that all Defendants' use of the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks in connection with the manufacture, sale or distribution of Outerwear violates sections 32, 43(c), and 43(a) of the Lanham Act (15 U.S.C. §§ 1114, 1125(c), and 1125(a)(1)(A));

           (v)     that Defendant Field and Stream LLC's intentional inducement of Field and Stream Brand, Costco and Moose Creek to use the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks violated sections 32, 43(c), and 43(a) of the Lanham Act (15 U.S.C. §§ 1114, 1125(c), and 1125(a)(1)(A)) and the common law of the State of New York;

           (vi)     that all Defendants have violated section 349 of the N.Y. General Business Law;

           (vii)     that all Defendants have violated section 360-l of the N.Y. General Business Law; and

(viii)   that all Defendants have engaged in trademark infringement and unfair competition under the common law of the State of New York;

B.   That Plaintiff be awarded as damages any fees earned by Field and Stream LLC and Field and Stream Brand in association with its licensing of Outerwear products bearing the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks;

C.   That a permanent injunction be entered restraining all Defendants and their subsidiaries, affiliates, divisions, officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, who receive notice of such order, and each of them, from:

(i)   importing, exporting, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any Outerwear product, including but not limited to men's jackets, bearing the Field and Stream Marks or any trademarks confusingly similar or identical to the Field and Stream Marks;

(ii)   otherwise imitating, copying, making unauthorized use of, or infringing upon or diluting any of the Field and Stream Marks in connection with Outerwear products; or

(iii)   causing likelihood of or actual confusion, injury to business reputation, or dilution of the distinctiveness of the Field and Stream Marks in connection with Outerwear products;

D.   That Order be entered:

(i)   directing all Defendants to file with this Court and serve on Plaintiff within thirty (30) days after service of an injunction a report in writing under oath,

setting forth in detail the manner or form in which it has complied with the injunction; and

(ii)    requiring Defendants to deliver to Plaintiff any and all Outerwear products, promotional materials, advertisements, and all other tangible items bearing or depicting the Field and Stream Marks or trademarks confusingly similar or identical to the Field and Stream Marks;

E.    That Plaintiff be awarded treble damages and all profits, gains, and advantages obtained by Defendants from the dilution and infringement of the Field and Stream Marks with respect to their use on Outerwear products, enhanced as the Court shall find to be just, according to the circumstances of the case;

F.    That Plaintiff be awarded its costs of suit, including reasonable attorneys' fees and expert fees; and

G.    That Plaintiff be awarded such other and further relief that the Court deems just and proper, including, but not limited to, punitive damages against Field and Stream LLC and Field and Stream Brand.

Dated: New York, New York           Respectfully submitted,
       December 15, 2009

                                    HAHN & HESSEN LLP
                                    Attorneys for Plaintiff
                                    G&F Licensing Corporation

                                    By:_____
                                           John P. Amato
                                    488 Madison Avenue
                                    New York, New York 10022
                                    Tel:    (212) 478-7200
                                    Fax:    (212) 478-7400