UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

G&F LICENSING CORPORATION,

    Plaintiff,        Case No. 09-CV-10197 (LTS)

 -against-

FIELD & STREAM LICENSES COMPANY, LLC,
FIELD AND STREAM BRAND, COSTCO WHOLESALE
CORPORATION, and MOOSE CREEK INC.,

    Defendants.
------------------------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**


Hahn & Hessen LLP
488 Madison Avenue
New York, New York 10022
Tel.: (212) 478-7200
Attorneys for Plaintiff

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.  PRELIMINARY STATEMENT ................................................................................ 1

II.  PERTINENT FACTUAL BACKGROUND ............................................................. 2

III.  ARGUMENT ............................................................................................................ 4

A.  THE APPLICABLE MOTION TO DISMISS LEGAL STANDARD .................. 4

B.  THE LICENSE AGREEMENT EXPRESSLY AUTHORIZES
    PLAINTIFF TO PURSUE TRADEMARK CLAIMS ............................................ 6

C.  EVEN ABSENT EXPRESS CONTRACTUAL AUTHORIZATION,
    PLAINTIFF HAS LEGAL STANDING TO PURSUE ITS UNFAIR
    COMPETITION CLAIMS AGAINST ALL DEFENDANTS ............................... 8

    1.  Section 43(a) of the Lanham Act Protects Plaintiff With Two
        Distinct Unfair Competition Claims: False Designation of Origin
        or Source and False Advertising ................................................................ 8

    2.  Plaintiff Has Sufficiently Pled False Advertising and False
        Designation of Origin or Source Claims .................................................. 10

    3.  There is No Merit to Defendants' Argument that Plaintiff Has No
        Unfair Competition Claims As a Matter of Law ...................................... 14

        i.  Defendants' Reliance on the Confusion Doctrine is
            Misplaced ...................................................................................... 14

        ii.  Plaintiff's Unfair Competition Claims Do Not Rest On
             Issues of Contract Interpretation ................................................. 16

D.  PLAINTIFF ALSO HAS STANDING TO PURSUE ITS TRADEMARK
    INFRINGEMENT AND DILUTION CLAIMS AGAINST ALL
    DEFENDANTS ...................................................................................................... 17

    1.  Plaintiff is an Exclusive Licensee, With Rights Tantamount to an
        Assignee, Under a Perpetual License Agreement ..................................... 17

    2.  As an Exclusive Licensee and the De Facto Assignee of the Field
        and Stream Marks on Outerwear, Plaintiff May Sue All Defendants
        for Trademark Infringement ..................................................................... 20

    3.  Plaintiff May Also Sue All Defendants for Trademark Dilution ............. 22

E.    PLAINTIFF'S DECLARATORY JUDGMENT CLAIM AGAINST THE UNAUTHORIZED THIRD-PARTY LICENSEES SHOULD NOT BE DISMISSED ........................................................................................................23

IV.    CONCLUSION................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

American Council of Learned Societies v. MacMillan, Inc.,
    Case No. 96-4103, 1996 U.S. Dist. LEXIS 18145 (S.D.N.Y. Dec. 6, 1996) ..........................10

Audi AG and Volkswagen of America, Inc. v. Shokan Coachworks, Inc.,
    592 F. Supp. 2d 246 (N.D.N.Y. 2008) ......................................................................................20

Bell Atl. Corp v. Twombly,
    550 U.S. 544 (2006) ....................................................................................................................5

Bliss Clearing Niagra, Inc. v. Midwest Brake Bond Co.,
    339 F. Supp. 2d 944 (W.D. Mich. 2004) ..................................................................................22

Browne-Vintners Co. v. National Distillers and Chem. Corp.,
    151 F. Supp. 595 (S.D.N.Y. 1957) ...........................................................................................21

Burma-Bibas, Inc. v. Excelled Leather Coat Corp.,
    584 F. Supp. 1214 (S.D.N.Y. 1984) ...........................................................................2, 13, 14, 16

Erickson v. Pardus,
    551 U.S. 89 (2007) ......................................................................................................................5

ESPN, Inc. v. Quiksilver, Inc.,
    586 F. Supp. 2d 219 (S.D.N.Y. 2008) ...........................................................................4, 5, 16

Ex Parte Teca Corporation,
    117 U.S.P.Q. (BNA) 367 (Comm'r Pat. & Trademarks 1958) ................................................18

G.H. Mumm Champagne v. Eastern Wine Corp.,
    142 F.2d 499 (1944), cert denied, 323 U.S. 715 (1944) ..........................................................20

Gruner + Jahn USA Pub's v. Meredith Corp.,
    991 F.2d 1072 (2d Cir. 1993) ....................................................................................................20

In re Elevator Antitrust Litig.,
    502 F.3d 47 (2d Cir. 2007) ..........................................................................................................5

ITC Ltd. v. Punchgini, Inc.,
    482 F.3d 135 (2d Cir. 2007) ........................................................................................................9

Johnson & Johnson v. Carter-Wallace, Inc.,
    631 F.2d 186 (2d Cir. 1980) ......................................................................................................10

Krasnyi Oktyabr, Inc. v. Trilini Imports, et. al.,
        Case No. 05-5359, 2007 U.S. Dist. LEXIS 23733 (E.D.N.Y. March 29, 2007) ....................19

Lee v. Sony BMG Music Entm't, Inc.,
        557 F. Supp. 2d 418 (S.D.N.Y. 2008)................................................................................5

Mastercard Int'l Inc. v. Sprint Comm. Co. and World Cup USA 1994, Inc.,
        Case No. 94-1051 (JSM), 1994 U.S. Dist. LEXIS 3398 (S.D.N.Y. 1994),
        aff'd, 23 F.3d 397 (2d Cir. 1994).........................................................................1, 9, 11, 24

Murphy v. Provident Mutual Life Ins. Co.,
        756 F. Supp. 83 (D. Conn.), aff'd 923 F.2d 923 (2d Cir. 1990) ............................................8

Nat'l Football League Props., Inc. v. Dallas Cowboys Football Club, Ltd.,
        922 F.Supp. 849 (S.D.N.Y. 1996) ..............................................................................2, 12, 16

Norman M. Morris Corp. v. Weinstein,
        466 F.2d 137 (5th Cir. 1972) ..........................................................................................9

Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty. Ltd.,
        2005 U.S. Dist. LEXIS 18062 (S.D.N.Y. June 14, 2005)....................................................20

Ortho Pharm. Corp. v. Cosprophar, Inc.,
        32 F.3d 690 (2d Cir. 1994)...............................................................................................9

Patnone, Inc. v. Esselte Letraset Ltd.,
        691 F. Supp. 768 (S.D.N.Y. 1988) ..................................................................................24

Piccoli v. Calvin Klein Jeanswear Co. et. al,
        19 F. Supp. 2d 157 (S.D.N.Y. 1998).......................................................................... passim

PPX Enters., Inc. v. Audiofidelity Enters., Inc.,
        818 F.2d 266 (2d Cir. 1987)..........................................................................................10

Quabaug Rubber Co. v. Fabian Shoe Co. Inc.,
        567 F.2d 154 (1st Cir. 1977).........................................................................................8, 9

Register.com, Inc. v. Domain Registry of Am. Ltd.,
        Case No. 02-6915, 2002 U.S. Dist LEXIS 24795 (S.D.N.Y. Dec. 26, 2002) ...................10, 15

San Juan Prods., Inc. v. San Juan Pools of Kansas, Inc.,
        849 F.2d 468 (10th Cir. 1988) ........................................................................................21

Silverstar Enterprises, Inc. v. Aday,
        537 F Supp. 236 (S.D.N.Y. 1982) ...............................................................................16, 17

Spotless Enterprises, Inc. v. Carlisle Plastics, Inc.,
        56 F. Supp. 2d 274 (E.D.N.Y. 1999) ................................................................................9

Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,
    588 F.3d 97 (2d Cir. 2009)......................................................................22

Student Advantage, Inc. v. CollegeClub.com,
    Case No. 99-8604, 1999 U.S. Dist. LEXIS 18998 (S.D.N.Y. Dec. 3, 1999) ...................10, 15

Tap Publications v. Chinese Yellow Pages (New York),
    925 F. Supp. 212 (S.D.N.Y. 1996) .................................................................16, 17

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007).............................................................................5, 16

Trump Plaza of the Palm Beaches Condo. Ass'n, Inc. v. Rosenthall,
    No. 08-80408, 2009 WL 1812743 (S.D. Fla. June 24, 2009)......................................9

TV Globo LTDA v. Brazil Up-Date Weekly, Inc.,
    Case No. 98-3911, 1999 U.S. Dist. LEXIS 3433 (S.D.N.Y. March 23, 1999) .......................18

Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,
    277 F.3d 253 (2d Cir. 2002)............................................................... passim

World Championship Wrestling v. Titan Sports, Inc.,
    46 F. Supp. 2d 118 (D. Conn. 1999)...........................................................22, 23

**FEDERAL STATUTES**

15 U.S.C. § 1114...................................................................................20

15 U.S.C. § 1125(a) ......................................................................... passim

15 U.S.C. § 1125(c)(1)..............................................................................22

**RULES**

Fed. R. Civ. P. 8(a) ...............................................................................5

Fed. R. Civ. P. 15(a)(2)...........................................................................25

**OTHER AUTHORITIES**

K. LANDSMAN, D. GLAZER AND I. TRELOAR, STANDING AND JOINDER CONSIDERATIONS IN
    TRADEMARK LITIGATION AND LICENSES, 99 TMR 1437 (2009).............................................23

## I.   **PRELIMINARY STATEMENT**[1]

Plaintiff owns the exclusive right to manufacture, sell and distribute Outerwear bearing the Field and Stream Marks.  So, while defendant Field & Stream Licenses Company, LLC ("Field and Stream LLC") may be the record owner of the Field and Stream Marks with the right to use them on all products other than Outerwear, Field and Stream LLC is not permitted under the Lanham Act and applicable state trademark law to represent to the public that it has the right to use or authorize the remaining defendants (hereinafter, the "Unauthorized Third-Party Licensees") to use the Field and Stream Marks on Outerwear.

Defendants' motion nevertheless argues otherwise.  According to Defendants, they have the right under applicable trademark law to falsely claim to the public that they have the right to sell Outerwear using the Field and Stream Marks because "as a matter of law, a party cannot infringe its own marks ...."[2]  That foundational statement for all of Defendants' arguments is patently incorrect.  See Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc., 277 F.3d 253, 260 (2d Cir. 2002) ("we see no reason why a false advertising claim may not be brought by a licensee just because the alleged violator is the licensor [and owner of the mark]"); Mastercard Int'l Inc. v. Sprint Comm. Co. and World Cup USA 1994, Inc., Case No. 94-1051 (JSM), 1994 U.S. Dist. LEXIS 3398, at *8 (S.D.N.Y. 1994) ("[t]here is no question that an exclusive licensee ... has standing" to pursue section 43(a) claims against third-party licensees), aff'd, 23 F.3d 397 (2d Cir. 1994);  Piccoli v. Calvin Klein Jeanswear Co. et. al, 19 F. Supp. 2d 157, 169 (S.D.N.Y. 1998) (Kaplan, J.) (upholding exclusive licensee's unfair competition claim against third-party licensees because "[t]he essence of the claim is that defendants' actions in selling Calvin Klein

---

[1]   Undefined terms used herein shall have the meanings ascribed to such terms in Plaintiff's Complaint [Docket No. 1].

[2]   Defendants' Memorandum of Law in Support of Motion to Dismiss Counts IV-XI of the Complaint and, as to the Field & Stream Licensees, Count I, at 1 [Docket No. 16].

jeans into plaintiff's arguably exclusive territory was akin to misappropriation or passing off, traditional bases of unfair competition relief"); Nat'l Football League Props., Inc. v. Dallas Cowboys Football Club, Ltd., 922 F. Supp. 849, 854-55 (S.D.N.Y. 1996) (Schiendlin, J.) (NFL Properties, the exclusive licensee of the Dallas Cowboys trademarks, permitted to sue the Dallas Cowboys, the owner of the mark, for unfair competition because "the focus should be on the nature of Defendants' activities regarding marks which Plaintiff has the exclusive right to commercially exploit"); Burma-Bibas, Inc. v. Excelled Leather Coat Corp., 584 F. Supp. 1214, 1217 (S.D.N.Y. 1984) (exclusive licensee of men's apparel bearing Oleg Cassini trademark permitted to sue its licensor and third-party licensee for false designation of origin under section 43(a) of Lanham Act).

As discussed further below, the Lanham Act and License Agreement expressly vest Plaintiff with the right to bring various trademark claims, including false advertising and false designation of origin or source, product infringement and dilution claims against all Defendants to protect its exclusive rights to manufacture, sell and distribute Outerwear bearing the Field and Stream Marks.  Since this is a federal Lanham Act case, and not a run-of-the mill breach of contract case as Defendants would have this Court believe, Defendants' motion to dismiss should be denied in all respects.

## II.   PERTINENT FACTUAL BACKGROUND

For almost 100 years, entities associated with Gordon & Ferguson Company have been selling goods under the name Field and Stream.  See Complaint at ¶ 13.  In 1987, Field & Stream Licenses Company (the "Original Licensor") acquired from Gordon & Ferguson Company (and/or its affiliates) the rights to all of the Field and Stream trademarks.  Id. at ¶ 14.  In 1988, the Original Licensor and Gordon & Ferguson of Delaware, Inc. (the "Original Licensee") entered into the License Agreement which granted the Original Licensee the exclusive right, in

perpetuity, to exploit the Field and Stream Marks in connection with the manufacture and sale of Outerwear, a term carefully defined in the License Agreement to mean "coats, jackets, blousons, vests, anoraks, parkas, ski jackets, ski bibs and ski pants, but only if such apparel is not designed and/or sold for active use in hunting or fishing." Id. at ¶¶ 14, 16.  The exclusive nature of the Original Licensee's rights were memorialized in the following provisions of the License Agreement.

(a) The License Agreement granted the Original Licensee (and any successor-in-interest) "the exclusive right, license and privilege to use, manufacture and sell" certain Outerwear products "anywhere in the world." See Complaint at ¶ 15, Ex. A at § I(A).

(b) The Original Licensor (and any successor-in-interest) represented that it would "not utilize for itself, or grant any license of, the Licensed Marks" for the Outerwear products. Id. at Ex. A at § I(D).

(c) The License Agreement granted the Original Licensee (and any successor-in-interest) standing to "prosecute … trademark infringement [claims] at [the Original Licensee's] sole expense." Id. at ¶ 101, Ex. A at § XI(A).

(d) The License Agreement provided that the "rights granted [to the Original Licensee (and any successor-in-interest) would] be exercised solely by [the Original Licensee and any successor-in-interest] …." Id. at Ex. A at § III(F).

In addition to these terms, the License Agreement also included several other clauses providing that the rights of the Original Licensee (or any successor-in-interest) in the Field and Stream Marks would be converted from an exclusive license to a de facto assignment once $1.5 million in licensing fees had been paid.  Id. at ¶¶ 17-19, Ex. A. at § XII(B).  Upon such a payment, the Original Licensee (or any successor-in-interest) (1) would only be required to pay a nominal licensing fee of $1.00 per year "for all calandars [sic] years thereafter" and (2) could freely "assign, sublicense, or otherwise transfer any rights or permit any use of the [Field and Stream Marks] without the prior written consent" of the Original Licensor.  Id. at ¶¶ 18-19, Ex.

3

A at §§ VI(D)(2) and XII(B).  Notably, the License Agreement had no termination date, and there are no minimum sales that the Original Licensee (or any successor-in-interest) was required to achieve in any given year or at any time, especially after the $1.5 million in fees had been paid.  Id. at Ex. A (generally).

The $1.5 million in licensing fees were paid by the Original Licensee by December 1991. Id. at ¶¶ 20-21.  Accordingly, as of that time, the Original Licensee's exclusive interest in the Field and Stream Marks ripened into a full assignment of the Field and Stream Marks with respect to the manufacture and sale of Outerwear.  Id. at Ex. A at §§ VI(D)(2) and XII(B).

In March 2007, Plaintiff acquired all of the Original Licensor's rights under the License Agreement.  Id. at ¶ 35.  Defendant Field and Stream LLC, with actual knowledge of Plaintiff's ownership interest, then entered into one or more license agreements with the Unauthorized Third-Party Licensees to manufacture, sell, distribute and advertise products bearing the Field and Stream Marks on Outerwear.  See Complaint at ¶¶ 67, 80, 92.  Certain products bearing the Field and Stream Marks (which fall squarely within the term Outerwear as defined under the License Agreement) have and are continuing to be manufactured and sold by the Unauthorized Third-Party Licensees in direct contravention of Plaintiff's rights.  Id. at ¶¶ 54-96, 103. Defendants' actions are interfering with and directly infringing upon Plaintiff's unequivocal right to use the Field and Stream Marks, to the exclusion of all others, including Field and Stream LLC and the Unauthorized Third-Party Licensees.  Id. at ¶¶ 73, 82, 96.

### III.  ARGUMENT

### A.  THE APPLICABLE MOTION TO DISMISS LEGAL STANDARD

"The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff."  ESPN, Inc. v. Quiksilver, Inc., 586 F. Supp. 2d 219, 224 (S.D.N.Y. 2008) (internal citation and quotation marks omitted).  The court must "accept all factual allegations in the

complaint as true," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), even if "doubtful in fact."   Bell Atl. Corp v. Twombly, 550 U.S. 544, 589 (2006).  "The court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff."   Lee v. Sony BMG Music Entm't, Inc., 557 F. Supp. 2d 418, 423 (S.D.N.Y. 2008).

While the factual allegations made in the complaint must be "plausible," In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007), and "raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, a complaint must be sustained "even if it strikes a savvy judge that actual proof of th[e] facts is improbable, and that a recovery is very remote and unlikely." Id. at 556.  The Second Circuit has emphasized that the Twombly "plausibility" standard is not a "universal standard of heightened pleading," but rather a "flexible plausibility standard which obliges a pleader to amplify a claim with some factual allegation in those contexts where such amplification is needed to render the claim plausible."  ESPN, 586 F. Supp. 2d at 224, quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).  Even after Twombly, Fed. R. Civ. P. 8(a) only requires that the allegations "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).

Plaintiff's Complaint readily meets this standard.  It establishes a clear right to relief for unfair competition, including false advertising and false designation of origin or source, product infringement and dilution claims against all Defendants under both the plain language of the License Agreement and applicable federal and state law.[3]  Accordingly, and as set forth in greater detail below, Defendants' motion, which only seeks dismissal of Counts I (Declaratory

---

[3]   Plaintiff concurs with Defendants that for the purposes of assessing their motion, this Court may apply the same analysis to Plaintiff's claims under the Lanham Act and state trademark law.  See Defendants' Memorandum of Law at 8 n.1.

Judgment against Unauthorized Third-Party Licensees), IV-VII (Federal Trademark Claims), and

VIII-XI (State Trademark Claims), should be denied in its entirety.[4]

## B.   THE LICENSE AGREEMENT EXPRESSLY AUTHORIZES PLAINTIFF TO PURSUE TRADEMARK CLAIMS

The terms of the License Agreement do not bar (as Defendants erroneously contend), but

expressly provide Plaintiff with standing to pursue all of its state and federal trademark claims.

The License Agreement provides, in relevant part:

> In the event that Licensee learns of any infringement or limitation
> of the [Field and Stream] Marks or of any use by any person
> [which term includes Field and Stream LLC and the Unauthorized
> Third-Party Licensees] of a trademark which has caused confusion,
> mistake or deception with respect to the Licensed Marks, in
> connection with products licensed under the [Field and Stream]
> Marks, it shall promptly notify [Field and Stream LLC] in writing
> and if in Licensee's reasonable opinion such infringement, or use
> also constitutes an infringement of the rights herein granted to
> Licensee, Licensee shall specifically so state in its notice.  In such
> latter case, if action to stop such believed infringement is not taken
> by [Field and Stream LLC] within thirty (30) days after the date of
> its receipt of such notice from Licensee, <u>Licensee shall have the
> right to prosecute such trademark infringement at Licensee's sole
> expense</u>, but in such event Licensee will keep [Field and Stream
> LLC] advised in advance of its intention in such action, and
> consult with [Field and Stream LLC] with respect thereto, and will
> not settle such action without [Field and Stream LLC's] written
> approval (which approval shall not be unreasonably withheld).

<u>See</u> Complaint at Ex. A at § XI(A) (emphasis added).  While the License Agreement provides for

Field and Stream LLC to be notified of any improper use of the relevant trademarks, Plaintiff's

notice to Field and Stream LLC of its own infringement and those of the remaining Defendants,

---

[4]   Defendants have not moved to dismiss Plaintiff's claim that it is the present owner of all rights under the License Agreement.  Accordingly, while Defendants' counsel has submitted a declaration raising factual questions concerning Plaintiff's rights under the License Agreement, for purposes of this motion, Plaintiff's absolute right and entitlement to all the benefits under the License Agreement must be assumed to be true and counsel's declaration should be disregarded.  <u>See</u> Accompanying Declaration of John P. Amato dated February 24, 2010.

whose alleged rights derive from and through Field and Stream LLC, would have been futile because Field and Stream LLC would not commence litigation against itself or the Unauthorized Third-Party Licensees. <u>See</u> Complaint at ¶ 102. In any event, Field and Stream LLC was on written notice of Plaintiff's claims for well over thirty days before this action was commenced, yet it refused to acknowledge Plaintiff's rights requiring the invocation of this Court's jurisdiction. <u>Id.</u>

Defendants have no reasonable argument to address the broad grant to Plaintiff of the right to prosecute trademark claims. Instead, the best they can do is rely on Section III(B) of the License Agreement that provides that (1) Plaintiff shall not challenge Field and Stream LLC's "rights in and to" the Field and Stream Marks, and (2) Plaintiff's use of the Field and Stream Marks shall not "vest in [Plaintiff] any title to or right" in the same "<u>except to the extent granted in this Agreement</u>" (emphasis added). <u>Id.</u> at Ex. A at § III(B). Defendants' reliance on Section III(B) is therefore misplaced because Section XI(A) (quoted above) confers standing on Plaintiff to pursue trademark-related claims when "such infringement infringes upon the rights herein granted to Licensee…." <u>Id.</u> at § XI(A).

This action does not contest Field and Stream LLC's "rights in and to" the Field and Stream Marks generally. Instead, this action solely challenges Field and Stream LLC's right to use (and authorize the use of) the Field and Stream Marks on Outerwear only. Plaintiff's exclusive rights under the License Agreement are not being contested on this motion and should be enforced because Plaintiff unambiguously possesses the exclusive right to use the Field and Stream Marks in connection with the manufacture and sale of Outerwear. Defendants (including Field and Stream LLC) are "unauthorized users" of the Field and Stream Marks on Outerwear and qualify as trademark "infringers" under applicable law. <u>See</u> Sections III(C)-(D) *infra*.

Plaintiff, therefore, has contractual standing to prosecute its trademark claims against all Defendants under the express terms of the License Agreement.

**C.   EVEN ABSENT EXPRESS CONTRACTUAL AUTHORIZATION, PLAINTIFF HAS LEGAL STANDING TO PURSUE ITS UNFAIR COMPETITION CLAIMS AGAINST ALL DEFENDANTS**

In a less than subtle attempt to disguise the merits of Plaintiff's trademark claims, Defendants' motion papers fail to specifically address Plaintiff's bundle of contractual rights under the License Agreement and the fact that Plaintiff has asserted _different_ trademark claims to enforce them. By "lumping" Plaintiff's trademark claims together as "infringement" claims, and then conflating general case law principles without applying them to the specific facts of this case, Defendants have intentionally attempted to muddy the waters and keep from the Court what binding Second Circuit authority makes clear:  Plaintiff's unequivocal right to pursue its unfair competition and other trademark claims against Defendants.

**1.   Section 43(a) of the Lanham Act Protects Plaintiff With Two Distinct Unfair Competition Claims: False Designation of Origin or Source and False Advertising**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides, in pertinent part, that "any person who believes that he or she is or is likely to be damaged" by the false or misleading use of a trademark may bring a civil action against the wrongdoer.  This standing requirement - the person's belief that "he or she is or is likely to be damaged" by an infringement - is flexible and open-ended, and not restrictive as Defendants claim in their motion.  Under this provision, "one need not be the owner of a federally registered trademark to have standing in a federal court." Quabaug Rubber Co. v. Fabian Shoe Co. Inc., 567 F.2d 154, 160 (1st Cir. 1977);  see also Murphy v. Provident Mutual Life Ins. Co., 756 F. Supp. 83, 86 (D. Conn.) ("the question of ownership is immaterial to standing under § 43(a), since standing may lie with mere users of trademarks"), aff'd, 923 F.2d 923 (2d Cir. 1990).  In fact, "one who may suffer adverse

8

consequences from a violation of section 1125(a) has standing to sue regardless of whether he is the registrant of a trademark."  Quabaug Rubber Co., 567 F.2d at 160; see also Twentieth Century Fox, 277 F.3d at 260 (exclusive licensee permitted to sue owner of the mark for false advertising); Norman M. Morris Corp. v. Weinstein, 466 F.2d 137, 142 (5th Cir. 1972) (exclusive licensee has standing under Section 43(a)); Trump Plaza of the Palm Beaches Condo. Ass'n, Inc. v. Rosenthall, No. 08-80408, 2009 WL 1812743, at *8 (S.D. Fla. June 24, 2009) (non-exclusive licensee permitted to sue); Picolli, 19 F. Supp. 2d at 171-72 (exclusive licensee permitted to sue); Mastercard, Case No. 94-1051 (JSM), 1994 U.S. Dist. LEXIS 3398, at *8 (same).

In order to have standing under section 43(a), a plaintiff need only set forth facts that it has a "reasonable interest" to protect and a "reasonable basis for believing that this interest is likely to be damaged" by the defendant's actions.  Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir. 1994).  To satisfy this standard, a plaintiff must allege (and eventually prove) "likely injury" and "commercial interests, direct pecuniary interests, [or] even a future potential for a commercial or competitive injury."  ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 169-70 (2d Cir. 2007); see also Picolli, 19 F. Supp. 2d at 168 (unfair competition requires pleading of facts "supporting a colorable property or pecuniary interest") (internal quotation marks omitted), quoting Berni v. Int'l Gourmet Restaurant of America Inc., 838 F.2d 642, 648 (2d. Cir. 1988); Spotless Enterprises, Inc. v. Carlisle Plastics, Inc., 56 F. Supp. 2d 274, 288-89 (E.D.N.Y. 1999) (standing conferred and motion to dismiss unfair competition claims denied where party adequately alleged a commercial interest and potential for commercial or competitive injury).

9

Although originally interpreted narrowly, section 43(a) now is considered to confer protection against a myriad of deceptive commercial practices. See PPX Enters., Inc. v. Audiofidelity Enters., Inc., 818 F.2d 266, 270-71 (2d Cir. 1987) (citing cases). It principally provides for two distinct causes of action: (1) false description or representation, known as "false advertising" and (2) false designation of origin or source. See Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 188 (2d Cir. 1980). Defendants' motion papers fail to discuss these trademark claims specifically to avoid their motion being found meritless on its face.

### 2. Plaintiff Has Sufficiently Pled False Advertising and False Designation of Origin or Source Claims

In order to state a claim for false advertising, Plaintiff only needs to allege that "some aspect of a defendant's advertising practices is either literally false or, though literally true, is likely to injure plaintiff by misleading and confusing consumers concerning the nature and characteristics of defendant's product or service." Register.com, Inc. v. Domain Registry of Am. Ltd., Case No. 02-6915, 2002 U.S. Dist LEXIS 24795, at *28 (S.D.N.Y. Dec. 26, 2002) (citing McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1548-49 (2d Cir. 1991); see also Student Advantage, Inc. v. CollegeClub.com, Case No. 99-8604, 1999 U.S. Dist. LEXIS 18998, at **2-3 (S.D.N.Y. Dec. 3, 1999) (same). In order to state a claim for false designation of origin or source, on other hand, a plaintiff must generally allege that it has a valid interest in a protectable mark and that the defendant's conduct is likely to cause confusion concerning the source or sponsorship of the goods or services in question. See Register.com, Inc., 2002 U.S. Dist. LEXIS 24793, at *27; American Council of Learned Societies v. MacMillan, Inc., Case No. 96-4103, 1996 U.S. Dist. LEXIS 18145, at *16 (S.D.N.Y. Dec. 6, 1996) (same).

Here, Plaintiff unquestionably has the right to pursue its claims for false advertising and false designation of origin or source against all Defendants because they are falsely representing

10

to the public that they have the right to sell Outerwear bearing the Field and Stream Marks.  In Mastercard Int'l Inc., a decision that Defendants do not attempt to distinguish in their motion papers and was affirmed by the Second Circuit, plaintiff received the exclusive right to use certain World Cup '94 trademarks in connection with its credit card services.  Mastercard Int'l Inc., 1994 U.S. Dist. LEXIS 3398 at *2.  When defendant began using the marks pursuant to the terms and conditions of a sub-license agreement, Mastercard brought an action seeking a preliminary and permanent injunction prohibiting defendant from issuing credit cards bearing the World Cup marks or undertaking any other activity that infringed on the rights granted to Mastercard under its license agreement with the licensor.  Id. at *3.  In concluding that there was "no question that an exclusive licensee such as Mastercard ha[d] standing" to pursue claims for false advertising, the Court noted that the "harm in this case comes from the loss of Mastercard's exclusive right to issue cards with the World Cup mark."  Id. at *8.  The Court further noted that the "essence of [Mastercard's false advertising] claim is that [defendant], while making no secret of the fact that it is the origin of its [credit] cards, [creates] a false impression concerning the sponsorship of the World cup mark by Mastercard, the exclusive user of the mark ...." Id. at *7 (emphasis added).

Also on point is the recent Second Circuit decision in Twentieth Century Fox (a case cited by Defendants, but not analyzed).  In this case, defendant licensor licensed to plaintiff "all the rights that [defendant] may require in order to produce, distribute, exploit, advertise, promote, and publicize theatrical motion pictures based on the 'X-Men' comic book series." Twentieth Century Fox, 277 F.3d at 255-56.  Eight years later, plaintiff licensee filed suit against defendant licensor claiming that it violated plaintiff's intellectual property rights in the "X-Men" film and associated marketing and branding efforts by marketing and producing the "Mutant X"

11

television series, whose concept, premise, and characters plaintiff alleged were virtually identical to those of the "X-Men" film. Id. at 256. In sustaining plaintiff's false advertising claim against its licensor, the Court found that a "licensee is not without recourse under section 43(a) of the Lanham act if its licensor makes false claims to promote a competing product .... The licensor's sole enjoyment of the goodwill in the licensed mark does not entitle it to make false claims to promote its own product, allegedly to the detriment of its licensee." Id. at 259-60.

There are numerous other cases that support Plaintiff's right to sue Field and Stream LLC for false advertising and false designation of origin or source, even though Field and Stream LLC owns the Field and Stream Marks. In NFL Props., for example, Judge Scheindlin upheld a similar claim commenced by a licensee with the exclusive right to "use [certain Dallas Cowboy Football Marks] for commercial purposes." NFL Props., 922 F. Supp. at 854. In its complaint, plaintiff alleged that the licensor and owner of the Dallas Cowboy Football Marks, i.e., Jerry Jones and the Dallas Cowboys, "commercially exploited [the] ... Marks [in violation of the exclusive license agreement] by using them to solicit a sponsorship agreement and by authorizing their use in agreements with [third parties]." Id. (emphasis added). Plaintiff also alleged that the licensor, in improperly using their own trademarks during "various press conferences and public appearances, ... sought to create the impression that a relationship exist[ed] between the licensor and various sponsor companies." Id. at 854. In concluding that plaintiff's "allegations [were] sufficient to state a cause of action under the broad language of § 43(a) of the Lanham Act," Judge Scheindlin found that the Court's focus "should be on the nature of Defendants' activities regarding marks which [p]laintiff has the exclusive right to commercially exploit." Id. at 855.

While this focus is missing from Defendants' superficial discussion of broad trademark law, it did not evade Judge Kaplan when presented with very similar facts in Picolli.  In that case, an exclusive licensee and distributor of Calvin Klein jeans in Scandinavia, sued defendant, an exclusive licensee and distributor of Calvin Klein jeans in America, under section 43(a) after discovering that defendant had been exporting Calvin Klein jeans to Denmark in direct violation of plaintiff's rights under its license agreement with both parties' licensor.  Picolli, 19 F. Supp. 2d at 160.  In concluding that plaintiff had alleged facts sufficient to support an unfair competition claim, Judge Kaplan found:

> [Plaintiff's] right to relief for unfair competition does not rest entirely, or even largely, upon issues of contract interpretation. The essence of the claim is that defendants' action in selling Calvin Klein jeans into plaintiff's arguably exclusive territory was akin to misappropriation or passing off, traditional bases of unfair competition relief.

Id. at 169.

Similarly, in Burma-Bibas, 584 F. Supp. at 1214, plaintiff manufacturer and exclusive licensee of men's apparel bearing the Oleg Cassini trademark, sued its licensor and an unauthorized third-party licensee for false designation of origin under section 43(a) of the Lanham Act.  The relevant portions of plaintiff's Lanham Act cause of action alleged that the unauthorized third-party licensee, with the knowledge and acquiescence of the licensor,

> created and will continue to create a likelihood of confusion in the public's mind as to whether [plaintiff] or [the third-party licensee] is exclusively authorized to use the … trademarks in connection with men's leather and suede jackets and coats.  Defendants' conduct has the tendency to cause the likelihood that the public will be confused, misled and deceived because such conduct creates the false impression that the men's leather and suede jackets and coats bearing the … trademarks made by [the third-party licensee] are manufactured, distributed and/or sold under the auspices or sponsorship or with the approval, of [plaintiff].

Id. at 1216.  The economic injury alleged by plaintiff was its inability to exercise its rights under its exclusive licensing agreement with the licensor.  Id.  The Court held that plaintiff adequately stated a false designation of origin or source claim because the complaint "alleg[ed] that confusion w[ould] result as to the source of the Oleg Cassini … coats and jackets."  Id. at 1217.

The common theme in all of these unfair competition cases is that the plaintiff was the exclusive licensee with the sole right to exploit a trademark, which right was being violated by the owner of the mark and/or by its "authorized" third-party licensees.  Here, just as in the above cases, Plaintiff enjoys the exclusive, perpetual right in the Field and Stream Marks in connection with the manufacture and sale of Outerwear.  By using the Field and Stream Marks to promote Outerwear online and in print advertisements, see Complaint at ¶¶ 55-56, 63, 84-85, Defendants are falsely billing their Outerwear as genuine, authorized Field and Stream products.  While there is no question that Field and Stream LLC authorized the goods, there is also no question that Defendants' manufacture, advertisement and sale of the goods is certainly not authorized by Plaintiff.  As described above, courts, in analogous situations, have permitted exclusive licensees to pursue unfair competition claims against both licensors and their third-party licensees where the products are being sold under the auspices of the exclusive licensee's sponsorship and approval.  Plaintiff is entitled to even greater protection in this case because it is not just an exclusive licensee, but it also enjoys rights tantamount to an ownership interest in the Field and Stream Marks as far as Outerwear is concerned.

**3.    There is No Merit to Defendants' Argument that Plaintiff Has No Unfair Competition Claims As a Matter of Law**

**i.    Defendants' Reliance on the Confusion Doctrine is Misplaced**

Defendants argue that, as a matter of law, an exclusive licensee cannot bring an action against the owner of the mark for any trademark claims, including false advertising, because the

licensee cannot prove confusion as to the origin or sponsorship of the Defendants' goods.  See Defendants' Memorandum of Law at 5-6.  Defendants' claim is incorrect because Plaintiff is not required to allege confusion as to the origin or sponsorship of Defendants' goods in connection with its false advertising claim.  Rather, Plaintiff is only required to allege that some aspect of Defendants' advertising practices is false or misleading.  See Register.com, Inc., 2002 U.S. Dist. LEXIS 24795, at **28-29; Student Advantage, Inc., 1999 U.S. Dist. LEXIS 18998, at **2-3.

By alleging (1) Plaintiff's exclusive, perpetual interest in the Field and Stream Marks as far as Outerwear is concerned, and (2) Defendants' improper use of the Field and Stream Marks on Outerwear, without Plaintiff's consent, in online and in print advertisements, Plaintiff's false advertising claim is adequately pled in the Complaint.  See Complaint at ¶¶ 55-56, 63, 84-85, and 123 ("Defendants have used the Field and Stream Marks …. in connection with the … advertising of Outerwear in a manner that is likely to cause … deception …."); see Twentieth Century Fox, 277 F.3d at 259-60 ("The licensor's sole enjoyment of the good will in the licensed marks does not entitle it to make false claims to promote its product, allegedly to the detriment of its licensee").

Second, with respect to Plaintiff's false designation of origin or source claim, Plaintiff does not dispute the fact that Field and Stream LLC is the source of the goods at issue.  The "confusion" at play here (and the confusion that courts take into consideration in factually analogous cases), is the public's belief that (1) Field and Stream LLC has the authority to grant "licenses" to the Unauthorized Third-Party Licensees, (2) such entities are authorized to use the Field and Stream Marks in connection with the manufacture and sale of Outerwear, and (3) Plaintiff sponsors or otherwise endorses Defendants' use of the Field and Stream Marks.  These facts, which are sufficiently alleged in Plaintiff's Complaint, support a claim for false

15

designation of origin or source. See Complaint at ¶¶ 3, 122-125, 137-139; see Nat'l Football League Props., 922 F. Supp. at 855; Picolli, 19 F. Supp. 2d at 169; Burma-Bibas, Inc., 584 F. Supp. at 1216-17.

ii.    **Plaintiff's Unfair Competition Claims Do Not Rest On Issues of Contract Interpretation**

Defendants claim that Plaintiff "has taken what is essentially a breach of contract claim, and attempted to frame it under the guise of various forms of trademark infringement and unfair competition." See Defendants' Memorandum of Law at 1. In support of this position, Defendants rely, improperly, on Tap Publications v. Chinese Yellow Pages (New York), 925 F. Supp. 212 (S.D.N.Y. 1996) and Silverstar Enterprises, Inc. v. Aday, 537 F Supp. 236 (S.D.N.Y. 1982). The crux of the underlying dispute in both of these decisions was whether the defendant licensors had improperly licensed the disputed mark to third parties. Tap Publications, 925 F. Supp. at 217; Silverstar, 537 F. Supp. at 241.

Unlike the plaintiffs in Tap Publications and Silverstar, Plaintiff's right to relief for unfair competition in this case does not rest upon issues of contract interpretation. First, there is no dispute on this motion that Plaintiff enjoys the exclusive right to the Field and Stream Marks on Outerwear. Defendants have not moved to dismiss Plaintiff's breach of contract claim and, accordingly, Plaintiff's claims concerning its exclusive rights in the Field and Stream Marks on Outerwear must be accepted by this Court as true on this motion. See, e.g., Tellabs, 551 U.S. at 322 ("courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true"); ESPN, 586 F. Supp. 2d at 224 (same).

Second, because Plaintiff is the exclusive licensee under the License Agreement, there can also be no legitimate dispute that Field and Stream LLC's "licensing" of the Field and

Stream Marks for use on Outerwear to the Unauthorized Third-Party Licensees (with which Plaintiff does not share any contractual relationships) and their subsequent use thereof violates Plaintiff's rights.  Where, as here, a plaintiff's proprietary interest in the trademark is not in dispute and plaintiff does not share a contractual relationship with one or all of the defendants, the defendants' conduct "cannot be determined by the principles of contract law alone but, instead, is subject to principles such as the common law of unfair competition…".  Piccoli, 19 F. Supp. 2d at 169 (internal quotation marks omitted) (where Judge Kaplan specifically upheld licensee's unfair competition claim against third-party licensees and distinguished Tap Publications and Silverstar on the basis that plaintiff's interest in the trademark was not "open to question" and plaintiff did not share a contractual relationship with the defendants).

The case authority relied upon by Defendants to challenge Plaintiff's standing to assert unfair competition claims is distinguishable from the facts of this case because of the express terms contained in the License Agreement.  The decisions discussed by Plaintiff, on the other hand, are directly on point and focus the light on the plain language of section 43(a) that unfair competition claims may be pursued by any user of trademarks (i.e., licensees) against any wrongdoer (i.e., licensors and unauthorized third-party licensees).  Accordingly, Plaintiff respectfully submits that it has alleged facts sufficient to support a finding of standing to pursue its false designation of origin or source and false advertising claims against all Defendants.

**D.     PLAINTIFF ALSO HAS STANDING TO PURSUE ITS TRADEMARK INFRINGEMENT AND DILUTION CLAIMS AGAINST ALL DEFENDANTS**

**1.     Plaintiff is an Exclusive Licensee, With Rights Tantamount to an Assignee, Under a Perpetual License Agreement**

Despite Defendants' contentions to the contrary, Plaintiff in no way "concedes" that Field and Stream LLC is the owner of the Field and Stream Marks as far as Outerwear is concerned. See Defendants' Memorandum of Law at 4.  It is true that Plaintiff is not the registrant of the

17

Field and Stream Marks.  See Complaint at ¶ 15.  This fact, however, has no bearing on Plaintiff's current ownership interest in the Field and Stream Marks in connection with the manufacture and sale of Outerwear.

Courts have held that if the terms of a license agreement are "perpetual," the licensor may be deemed to have parted with its ownership rights in the marks and the "license" can be construed as an assignment of the trademark rights.  See Ex Parte Teca Corporation, 117 U.S.P.Q. (BNA) 367, 368 (Comm'r Pat. & Trademarks 1958) (perpetual license agreement determined to be an assignment of trademark rights).  A license can be perpetual "where the agreement is silent as to duration of the licensee's rights."  TV Globo LTDA v. Brazil Up-Date Weekly, Inc., Case No. 98-3911, 1999 U.S. Dist. LEXIS 3433, at *8 (S.D.N.Y. March 23, 1999) (copyright case), quoting Fitch v. Shubert, 20 F. Supp. 314, 315-16 (S.D.N.Y. 1937).  A license may also be perpetual where a licensee is granted the exclusive right to use a trademark upon payment of a nominal fee on an annual basis.  See Ex Parte Teca Corporation, 117 U.S.P.Q. at 368 (license agreement perpetual where it provided for exclusive trademark use upon the payment of "$1.00 … each year for the life of the trademarks or any renewal or extension thereof").

The License Agreement at issue here is clearly perpetual in nature.  First, it does not include any termination date.  Second, it provides for Plaintiff's annual payment of $1.00 "for all calendars [sic] years" once $1.5 million in licensing fees have been paid.  Id. at ¶ 18, Ex. A at ¶ VI(D)(2).  By the time the $1.5 million fee amount had been paid by Plaintiff's predecessor-in-interest in December 1991 (id. at ¶¶ 20-21), a fact that Defendants do not dispute, the License Agreement was undoubtedly "perpetual" and any remaining rights the Original Licensor

maintained in the Field and Stream Marks in connection with the manufacture and sale of Outerwear were irrevocably assigned to the Original Licensee.

Plaintiff's status as an exclusive licensee, with rights tantamount to an assignee, bestows upon it an ownership interest in the Field and Stream Marks as far as Outerwear is concerned. Krasnyi Oktyabr, Inc. v. Trilini Imports, et. al., Case No. 05-5359, 2007 U.S. Dist. LEXIS 23733, at **8-9 (E.D.N.Y. March 29, 2007) ("[A] truly exclusive licensee, one who has the right even to exclude his licensor from using the mark . . . is equated with an assign[ee] since no right to use [the mark] is reserved to the licensor, and the licensee's standing drives from his presumed status as assignee.") (quoting Fin. Inv. Co. v. Gerberit AG, 165 F.3d 526, 531-32 (7th Cir. 1998)).   The License Agreement contains the requisite "exclusivity" language and allows Plaintiff to exclude even Field and Stream LLC from utilizing the Field and Stream Marks on Outerwear.   See, e.g., Complaint, Ex. A at § I(D) ("Except as set forth in this License Agreement, [Licensor] shall not utilize for itself, or grant any license of, the Licensed Marks for the Licensed Products."); see also Section II supra.

In an attempt to undermine Plaintiff's status as an exclusive licensee with rights tantamount to an assignee, Defendants will most likely rely on the representations contained in the License Agreement that Field and Stream LLC "is the owner of … the [Field and Stream Marks]" and that "any use of the [Field and Stream Marks] … shall inure to the benefit of [Field and Stream LLC] for the purposes of trademark ownership."   See Ex. A at §§ II(B) and III(A). This language is of no avail because the ownership rights as far as Outerwear is concerned were encumbered by the License Agreement.   Once the $1.5 million of licensing fees were paid in December 1991, the License Agreement then effectively and forever carved out a discrete ownership interest in the Field and Stream Marks in connection with the manufacture and sale of

19

Outerwear and such interest was transferred to Plaintiff under the plain terms of the License Agreement. See Section II *supra*. This assignment of rights was clear and unequivocal and confirmed by Field & Stream Licenses Company in its letter to Plaintiff dated March 13, 2006. See Complaint at ¶¶ 20-25, at Ex. C. It was also confirmed by Plaintiff when it submitted a $1.00 bank check dated December 31, 2007 to Field and Stream Holdings which represented the licensing fee payable under the License Agreement for the year ending December 31, 2007 and when Field and Stream Holdings cashed the check on or about February 2, 2008. Id. at ¶¶ 44-45.

> **2.  As an Exclusive Licensee and the De Facto Assignee of the Field and Stream Marks on Outerwear, Plaintiff May Sue All Defendants for Trademark Infringement**

Section 32(a) of the Lanham Act, 15 U.S.C. § 1114, provides that any person who uses a trademark "without the consent of the registrant" in such a manner which is "likely to cause confusion" shall be liable "in a civil action by the registrant." Gruner + Jahn USA Pub's v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993). Although the language of the statute provides that the "registrant" of the mark may pursue claims for trademark infringement, courts in this Circuit have permitted trademark infringement suits to be maintained by exclusive licensees who enjoy certain ownership interests in the marks. See, e.g., G.H. Mumm Champagne v. Eastern Wine Corp., 142 F.2d 499, 500, 502 (1944), cert denied, 323 U.S. 715 (1944) (standing to pursue trademark infringement claim where underlying license agreement permitted licensee to exclude licensor from selling in a designated territory); Audi AG and Volkswagen of America, Inc. v. Shokan Coachworks, Inc., 592 F. Supp. 2d 246, 271-72 (N.D.N.Y. 2008) (finding that "Courts in this circuit have held that an exclusive licensee of a trademark owner has standing to prosecute a claim for trademark infringement."); Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty. Ltd., 2005 U.S. Dist. LEXIS 18062, at *8 (S.D.N.Y. June 14, 2005) (concluding that as "the exclusive licensee" plaintiff "ha[d] the right

prosecute th[e] trademark infringement claim"); Browne-Vintners Co. v. National Distillers and Chem. Corp., 151 F. Supp. 595, 602 (S.D.N.Y. 1957) (standing existed where license agreement granted licensee "a monopoly of [the product's] sale in the United States").

In their motion papers, Defendants admit (as they must) that exclusive licensees may pursue claims for trademark infringement.  See Defendants' Memorandum of Law at 8. Defendants' only basis for challenging Plaintiff's standing to pursue its trademark infringement claims (other than the "confusion" and "contract claim" arguments addressed above) is that none of Defendants, including Field and Stream LLC, can be an "infringer -- i.e., an unauthorized user of the mark" because (1) Plaintiff supposedly lacks an ownership interest in the Field and Stream Marks and (2) Field and Stream LLC is the actual owner of the Field and Stream Marks and "authorized" the other Defendants to use the same.  See Defendants' Memorandum of Law at 4, 8.

Defendants' arguments are baseless given the facts of this case.  As discussed above, a discrete ownership interest in the Field and Stream Marks as far as Outerwear is concerned was carved out when the $1.5 million in licensing fees were paid by December 1991.  Because the Field and Stream Marks, as they relate to the manufacture and sale of Outerwear, are vested exclusively in Plaintiff, Field and Stream LLC's contention that it cannot infringe upon its "own marks" lacks merit since it does not "own" the right to use the Field and Stream Marks on Outerwear.  Moreover, where, as here, exclusive trademark rights have been granted to a licensee, any subsequent license to a third party purporting to grant the same rights is void or voidable as a matter of law.  See, e.g. San Juan Prods., Inc. v. San Juan Pools of Kansas, Inc., 849 F.2d 468, 474 (10th Cir. 1988) (third party's license void where registrant of the trademark had already extended exclusive licensing rights to original licensee).

Under the terms of the License Agreement, Field and Stream LLC was not authorized to grant licensing rights in the Field and Stream Marks to any third-party, including the Unauthorized Third-Party Licensees. Accordingly, Field and Stream LLC's grant of the licenses and the Unauthorized Third-Party Licensees' use of the Field and Stream Marks in connection with the manufacture and sale of Outerwear makes them infringers and "unauthorized users of the marks." See Complaint at ¶¶ 4, 102.

### 3.    Plaintiff May Also Sue All Defendants for Trademark Dilution

Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1), provides that the "owner of a famous mark" may seek legal relief against any person who uses the mark in a manner "that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1); Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 105 (2d Cir. 2009) (stating that the statute authorizes the issuance of an injunction against the user of the mark where dilution is likely to result, regardless of the "presence or absence of actual or likely confusion, of competition, or of actual economic injury") (internal citation and quotation marks omitted).

Although the use of the term "owner" appears at first glance to prohibit a licensee from maintaining an action under section 43(c), courts generally have applied the same analysis to evaluate an exclusive licensee's standing under section 43(c) as under section 32(1). See, e.g., Bliss Clearing Niagra, Inc. v. Midwest Brake Bond Co., 339 F. Supp. 2d 944, 960-61 (W.D. Mich. 2004) (exclusive licensee has standing to assert both infringement and dilution claims where it enjoyed the "exclusive and perpetual right and license to use the [mark] 'throughout the world' as well as the right to pursue actions for infringement of the mark"); World Championship Wrestling v. Titan Sports, Inc., 46 F. Supp. 2d 118, 122 (D. Conn. 1999)

22

(exclusive licensee's standing to sue for trademark dilution withstood motion to dismiss); <u>see also</u> K. Landsman, D. Glazer and I. Treloar, Standing and Joinder Considerations in Trademark Litigation And Licenses, 99 TMR 1437, 1446 (2009) ("The legislative history of [the Federal Trademark Dilution Act] suggests that Congress changed 'registrants' to 'owners' to protect a broader class of famous marks .... Accordingly, the class of plaintiffs with standing to sue for dilution as 'owners' of famous marks appears to be co-extensive with the class of plaintiffs with standing to sue for infringement as 'registrants' of registered marks.").

As discussed above, Plaintiff is not only an exclusive licensee, but also possesses an ownership interest in the Field and Stream Marks in connection with the manufacture and sale of Outerwear.  In the Complaint, Plaintiff alleges that Defendants' actions have infringed upon Plaintiff's rights to exploit exclusively the Field and Stream Marks assigned to Plaintiff in the License Agreement and that such actions are diluting and blurring the distinctiveness of the Field and Stream Marks as far as Outerwear is concerned.  <u>See</u> Complaint at ¶¶ 126-31, 140-143. These allegations are sufficient to adequately state a claim for dilution of the Field and Stream Marks against Defendants.  <u>See</u>, <u>e.g.</u> <u>World Championship Wrestling</u>, 46 F. Supp. 2d at 121-23 (dilution claim withstood motion to dismiss where plaintiff, an exclusive licensee with rights tantamount to an ownership interest in certain trademarks, alleged that defendants' actions were "diluting and blurring the distinctiveness of [its] trademarks").

## E.    PLAINTIFF'S DECLARATORY JUDGMENT CLAIM AGAINST THE UNAUTHORIZED THIRD-PARTY LICENSEES SHOULD NOT BE DISMISSED

Count I of the Complaint requests that the Court issue a declaratory judgment upholding the validity of the License Agreement and declaring that Plaintiff, to the exclusion of all others, including the Unauthorized Third-Party Licensees, possesses the sole right to manufacture and sell Outerwear as defined in the License Agreement.  In a feeble attempt to undermine Plaintiff's

allegations, Defendants argue that because the Unauthorized Third-Party Licensees are not parties to the License Agreement,  there "is no actual controversy ripe for declaratory relief." Defendants' argument is not supported by any specific case law authority.

In evaluating whether an exclusive licensee is entitled to declaratory or injunctive relief (which also requires a declaration of the parties' rights), courts will consider the express terms of the underlying contract and the extent to which such contract precludes the original licensor from granting additional rights in the trademarks.  Where, as here, a licensee is granted exclusive trademarks rights and the licensor subsequently violates or threatens to violate the express terms of the underlying contract by issuing licenses to third parties, courts will issue a judgment declaring the licensee's right to "exclude" all others from using the trademarks at issue.  See, e.g., Patnone, Inc. v. Esselte Letraset Ltd., 691 F. Supp. 768, 780 (S.D.N.Y. 1988) (exclusive licensee granted declaratory relief as to scope of rights under license agreement, including right to exclude unauthorized third-party licensees from using the trademarks); Mastercard, 1994 U.S. Dist LEXIS 3398, at *6 (in granting injunction in favor of plaintiff exclusive licensee against unauthorized third-party licensees, the Court found that since the licensor "granted … exclusive [licensing] rights" to plaintiff, the unauthorized third-party licensees "could not have obtained those rights from" the original licensor).

## IV.    **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' motion in all respects and award such other relief as the Court deems just and necessary. To the extent the Court may grant Defendants' motion, Plaintiff respectfully requests leave to replead under Fed. R. Civ. P. 15(a)(2).

Dated: New York, New York
       February 24, 2010

                              **HAHN & HESSEN LLP**
                              Counsel for Plaintiff
                              G&F Licensing Corporation

                              By:
                                   John P. Amato
                                   A Member of the Firm

                              488 Madison Avenue
                              New York, NY 10022
                              (212) 478-7380

25