UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

G&F LICENSING CORPORATION,

Plaintiff,

v.

FIELD & STREAM LICENSES COMPANY,
LLC, OTTO INTERNATIONAL FS LLC,
COSTCO WHOLESALE CORPORATION
and MOOSE CREEK, INC.,

Defendants.

---

Civil Action No.
09 CV 10197 (LTS)

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS THE AMENDED COMPLAINT

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone:  (212) 682-7474
Facsimile:  (212) 687-3229
jmoskin@foley.com
Attorneys for Defendants

*Of Counsel:*

Alicia Pitts, Esq.
FOLEY & LARDNER LLP

Kermit D. Marsh, Esq.
The Law Offices of Kermit D. Marsh
9550 Warner Avenue, Suite 250
Fountain Valley, California 92708
(714) 593-2321
*Attorney for Moose Creek, Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ...................................................................................................................... 3

    A.    Ownership of the Field & Stream Trademarks ............................................................ 5

ARGUMENT ............................................................................................................................ 7

    A.    Counts 1 and 2 Should Be Dismissed Because Plaintiff Is Not a De Facto Owner of the FIELD & STREAM Trademark ......................................................................... 7

    B.    Count 6 of the Complaint Fails To Allege False Advertising................................... 12

    C.    Counts 5 and 7-13 Should be Dismissed Because Defendants F&S and Otto Can Not Infringe F&S's Own Trademark .............................................................................. 17

    D.    Counts 14 and 15 Are Barred By The Statute of Limitations, Laches and Acquiescence, And Fail to State Claims for Which Relief Can Be Granted ........... 20

    E.    The Court Lacks Subject Matter Jurisdiction Over Counts 3 and 4 of the FAC ...... 22

CONCLUSION........................................................................................................................ 22

i

NYC_802331.2

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009).................................................................13

*ATSI v. Shaar Fund,*
   493 F.3d 87 (2nd Cir. 2007)...............................................1-2, 10

*Avon Prods., Inc. v. S.C. Johnson & Son, Inc.,*
   984 F.Supp. 768 (S.D.N.Y. 1997) .................................................18

*B. Braun Medical v. Abbott Labs.,*
   124 F.3d 1419 (Fed. Cir. 1997)....................................................21

*Ballet Makers, Inc. v. U.S. Shoe Corp.,*
   633 F. Supp. 1328 (S.D.N.Y. 1986)........................................17, 19

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)......................................................................13

*Bristol-Meyers Squibb Co. v. McNeil-P.P.C., Inc.,*
   973 F.2d 1033 (2d Cir. 1992).......................................................17

*Burma-Bibas, Inc. v. Excelled Leather Coat Corp.,*
   584 F. Supp. 1214 (S.D.N.Y. 1984)..............................................17

*Calvin Klein Jeanswear Co. v. Tunnel Trading,*
   2001 WL 1456577 (S.D.N.Y. 2001) ..............................................9

*Cat Tech LLC v. TubeMaster, Inc.,*
   528 F.3d 871 (Fed. Cir. 2008)......................................................21

*Colliton v. Cravath, Swaine & Moore LLP,*
   No. 08 Civ 0400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) ................................8

*Conopco, Inc. v. Campbell Soup Co.,*
   95 F.3d 187 (2d Cir. 1996)...........................................................21

*Dawn Donut Co. v. Hart's Food Stores, Inc.,*
   267 F.2d 358 (2d Cir. 1959)........................................................20

*Finance Inv. Co. v. Geberit AG,*
   165 F.3d 536 (7th Cir. 1998) .........................................................9

*G.H. Mumm Champagne v. E. Wine Corp.,*
   142 F.2d 499 (2d Cir. 1944)........................................................18

NYC_802331.2

*GMA Accessories, Inc. v. Idea Nuova, Inc.*,
    157 F. Supp. 2d 234 (S.D.N.Y. 2000) .......................................................................12

*Gordon & Breach Science Publishers S.A. v. Am. Institute of Physics*,
    859 F.Supp. 1521 (S.D.N.Y. 1994) .........................................................................15

*Gruen Marketing Corp. v. Benrus Watch Co.*,
    955 F. Supp. 979 (N.D. Ill. 1997) .............................................................................9

*Houbigant, Inc. v. ACB Mercantile*,
    914 F. Supp. 964 (S.D.N.Y. 1995) .........................................................................17

*ICEE Distribs., Inc. v. J&J Snack Foods Corp.*,
    445 F.3d 841 (5th Cir. 2006) ..................................................................................17

*In re Casino de Monaco Trademark Litigation*,
    No. 07 Civ. 4802 (DAB) 2010 U.S. Dist. LEXIS 33950 (S.D.N.Y. Mar. 31, 2010) .............20

*Jack Russell Terrier Network of North. Cal. v. Am. Kennel Club, Inc.*,
    407 F.3d 1027 (9th Cir. 2005) ................................................................................15

*Kant v. Columbia Univ.*,
    No. 08 Civ 747 (PGG), 2010 WL 807442 (S.D.N.Y. Mar. 9, 2010) .......................................8

*L.G.B., Inc. v. Gitano Group, Inc.*,
    769 F.Supp. 1243 (S.D.N.Y. 1991) ........................................................................19

*Louis Vuitton Malletier v. Dooney & Bourke*,
    525 F.Supp.2d 558 (S.D.N.Y. 2008) ......................................................................17

*Mastercard Int'l Inc. v. Sprint Comm. Co.*,
    No. 94 Civ. 1051, 1994 WL 97097 (S.D.N.Y. 1994) .............................................16

*Medtech Products Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008) ....................................................................10

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*,
    425 F.Supp.2d 402 (S.D.N.Y. 2006) ......................................................................17

*MJ & Partners Restaurant Ltd. Partnership v. Zadikoff*,
    10 F.Supp.2d 922 (N.D.Ill. 1998) ..........................................................................17

*N.F.L. Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*,
    922 F.Supp. 849 (S.D.N.Y. 1996) .........................................................................19

*Nat'l Union Fire Ins. Co. v. Karp*,
    108 F.3d 17 (2d Cir. 1997) .....................................................................................20

NYC_802331.2

*National Basketball Ass'n v. Motorola, Inc.*,
    105 F.3d 841 (2nd Cir. 1997)............................................................................12

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
    19 F.Supp.2d 157 (S.D.N.Y. 1998) ..................................................................19

*Pilates, Inc. v. Current Concepts, Inc.*,
    120 F. Supp. 2d 286 (S.D.N.Y. 2000)..............................................................11

*Profitness Physical Therapy v. Pro-Fit Orthopedic*,
    314 F.3d 62 (2nd Cir. 2002).........................................................................21-22

*Quabag Rubber Co. v. Fabian Shoe Co.*,
    567 F.2d 154 (1ˢᵗ Cir. 1977)............................................................................18

*Reinhardt v. Wal-Mart Stores, Inc.*,
    547 F. Supp. 2d 346 (S.D.N.Y. 2008)..............................................................10

*Rocky Brands, Inc. v. Red Wing Shoe Co. Inc.*,
    2008 U.S. Dist. LEXIS 87031 (S.D. Ohio Oct. 27, 2008)................................12

*S. Heath & Son, Inc. v. AT&T Information Systems, Inc.*,
    9 F.3d 561 (7th Cir. 1993) ...............................................................................16

*Silverman v. CBS, Inc.*,
    870 F.2d 40 (2d Cir. 1989), <u>cert</u>. <u>denied</u>, 492 U.S. 907 (1989) ...........................11

*Silverstar Enters., Inc. v. Aday*,
    537 F.Supp. 236 (S.D.N.Y. 1982) ...............................................................17, 19

*TAP Publ'ns, Inc. v. Chinese Yellow Pages (New York) Inc.*,
    925 F. Supp. 212 (S.D.N.Y. 1996) ...........................................................17, 19-20

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*,
    221 F.Supp.2d 410 (S.D.N.Y. 2002).................................................................18

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
    277 F.3d 253 (2d Cir. 2002)..........................................................................16-18

*Wallace v. New York City Dep't of Corr.*,
    No. 95 CV 4404, 1996 WL 586797 (E.D.N.Y. Oct. 9, 1996) .................................7

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

16 C.F.R. § 255.5 .............................................................................................14

15 U.S.C. § 1115(a) ..........................................................................................10

iv

15 U.S.C. § 1115(b) ....................................................................................................10

15 U.S.C. § 1119 ........................................................................................................12

15 U.S.C. §1125(a) ...............................................................................................12, 18

15 U.S.C. § 1127 ...................................................................................................11, 18

28 U.S.C. § 2201-2202 ...............................................................................................20

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

CPLR § 213(2) .............................................................................................................21

Minn. Stat. § 541.05(1) ...............................................................................................21

New York General Business Law § 349 and 350 .......................................................18

**OTHER AUTHORITIES**

5 J Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, § 27.24 (2009)........12

NYC_802331.2

## PRELIMINARY STATEMENT

Having been granted six weeks following the April 9, 2010 hearing to amend its complaint in the face of defendants' prior motion to dismiss (including extra time to assess the declarations of Jerry Lavin, the prior owner of both Field & Stream and Gordon & Ferguson and Larry Latz, the prior COO of Gordon & Ferguson of Delaware), Plaintiff's First Amended Complaint ("FAC") adds no new facts  "sufficient 'to raise a right to relief above the speculative level,'" ATSI v. Shaar Fund, 493 F.3d 87, 98 (2nd Cir. 2007).  Rather, G&F Licensing ("GFL") continues to rely on the same manifestly false and incomplete recitations of contractual terms in the 1988 Field & Stream license it previously cited in opposing the first motion to dismiss – but does so now as the basis for an affirmative claim of trademark ownership.  Thus, in apparent recognition that a trademark owner and its licensees can not infringe the owner's marks, GFL now contends it has "a discrete ownership interest" in the same trademarks it previously admitted are owned by F&S.  Indeed, the license agreement expressly specifies that F&S is the owner of the FIELD & STREAM trademarks; that all goodwill in the marks belongs to F&S and that it is a breach of contract for the licensee even to assert otherwise.  Taken together with plaintiff's affirmative allegations and express admissions in its original complaint that F&S is indeed the owner of the subject marks and the federal registrations therefore, its "discrete ownership" claim is nothing short of remarkable.  GFL's fundamental abandonment of its original theory that even as a mere licensee it could sue the licensor for infringement would appear to be in plain recognition that its original theory could not withstand dismissal and is a transparent effort to manufacture a claim where none exists.  However, the law is clear that merely contradicting prior admissions does not erase the prior admissions from the record and does not raise genuine issues of fact.

Because, as GFL previously conceded (and affirmatively alleged), F&S unquestionably is

1

NYC_802331.2

the owner of the FIELD & STREAM marks and the registrations therefore, F&S and its licensees can not be guilty of infringement.  Indeed, GFL admitted as recently as February 24 that "there is no question that Field & Stream authorized the goods" (G&F Brf, Dckt No. 20, at 14), and "Plaintiff does not dispute the fact that Field & Stream is the source of the goods at issue." (Id. at 15.)  F&S can not both be and not be the source of the goods in issue, and because the goods are all genuine products licensed by the trademark owner, by definition they can not also be infringing.  As a matter of law, plaintiff thus is not entitled to a declaratory judgment that it somehow owns the marks (Counts 1 and 2), and its infringement claims (Counts 5 and 7-13) again do not meet the requirements to withstand dismissal.

Nor has plaintiff satisfied the distinct pleading requirements to make out a claim of false advertising.  Without identifying any new facts "sufficient 'to raise a right to relief above the speculative level,'" ATSI v. Shaar Fund, supra, or alleging any false statements made by any defendant, GFL has simply redesignated its prior claims for trademark infringement and its unsupported claim now to be the owner of the FIELD & STREAM marks as also constituting false advertising.  As such, the very same provisions of the 1998 license agreement that confirm F&S's ownership of its marks, together with GFL's prior admissions that F&S owns its marks, preclude GFL's claim that it constitutes false advertising for F&S to hold itself out publicly as trademark owner or for F&S's authorized licensee (Otto) to hold itself out as an authorized licensee.  Nor has GFL alleged facts to show any competitive injury from F&S's or Otto's (truthful) statements.  On the contrary, given that plaintiff has never existed as anything other than a bare legal structure whose only claimed address is the personal apartment of its only officer, Paul Petrov, and given that GFL does not even allege that it or any of its claimed predecessors have sold so much as a single garment since 2005, it is impossible for GFL to have

NYC_802331.2

suffered any competitive injury.  Accordingly, the false advertising claim (Count 6) is without merit and should be dismissed.

Finally, as plaintiff is aware from the declarations of Jerry Lavin and Larry Latz, Costco has been selling under the FIELD & STREAM trademark the same lined heavy weight shirts (made by Moose Creek and its predecessors) for 25 years.  GFL's purported predecessor (the original licensee) expressly declined a license offered by F&S to make these shirts, and, as a result, plaintiff's complaint now is barred by the six-year statute of limitations as well as by laches and acquiescence.  Although GFL has rightly abandoned its infringement claims against Costco and Moose Creek, its new request for declaratory relief challenging Costco's longstanding relationship with F&S is not even premised on any legal theory and thus fails to state a claim.  Counts 14 and 15 should thus be dismissed.

## **BACKGROUND**

The relevant pleaded facts were set forth in F&S' prior motion and in the Joint Preliminary Pre-Trial Statement (Section f at pp. 22-27), and will only be summarized here (and referred to in greater detail in the argument).  The following timeline summarizes the basic facts.

1983:    Field & Stream (still jointly owned with Gordon & Ferguson Merchandising) licenses Costco to sell lined heavyweight flannel shirts (Lavin Dec. ¶3 et seq.; Latz Decl. ¶ 4.)

January 2, 1987:   Gordon & Ferguson Merchandising Company[1] assigns the FIELD & STREAM trademarks to Field & Stream Licenses Co. (Moskin Decl. Ex A.)

---

[1] Although not essential to resolving this motion, GFL does not purport to be a successor to Gordon & Ferguson Merchandising Company, the record owner of the trademarks until 1987.  It only purports to claim rights tracing back to the original licensee, G&F Delaware (created in 1988) not the prior owner before the spin off of the two parts of the company by Gordon & Ferguson Merchandising.  G&F Delaware, G&F NY and GFL nowhere appear in the chain of title to the registrations.  (Moskin Dec. Ex A.)

3

1988:   Jerry Lavin divides Gordon & Ferguson Merchandising into two companies (both based in Minnesota): Field & Stream Licenses and Gordon & Ferguson of Delaware, Inc. (G&F Delaware). (Lavin Dec. ¶ 2.)

October 28, 1988:   F&S enters the subject license agreement with G&F Delaware (FAC Ex. 1)

March 2001:   G&F Delaware declines to exercise a right of first refusal to make lined heavyweight flannel shirts (FAC Ex. G; Lavin Dec. ¶ 4; Ex. A.)

2005:   Last alleged sale by GFL or its claimed predecessors in interest of any outerwear bearing the name FIELD & STREAM. (FAC ¶ 41.)

2006:   With F&S's consent, G&F Delaware assigns the license to Gordon & Ferguson, Inc. ("G&F NY").

March 2007:   1988 license agreement transferred by G&F NY to GFL without prior notice to or consent of F&S (FAC ¶61); the first alleged notice to F&S was dated June 11, 2007 (FAC Ex. F).

August 4, 2008:   F&S terminates the 1988 license agreement (FAC Ex. J).

December 15, 2009:   commencement of suit.

Although the August 2008 termination was based on the insolvency of G&F NY[2], in a March 10, 2009 letter to Mr. Petrov and counsel for Capital Business Credit ("CBC"), the principal creditor of G&F NY, Field & Stream further clarified that because the license had been thus transferred by G&F NY to GFL without Field & Stream's consent, the transfer was invalid. F&S further explained that the transfer was an assignment for the benefit of creditors under Section X(B)(4) of the License Agreement, thus providing additional and independent grounds to

---

[2] Based upon the July 15, 2008 email from G&F NY to F&S (FAC Ex. K), GFL does not appear to contest such insolvency – at least of G&F NY.

4

terminate.  As set forth in the letter, the transfer was made by G&F NY during the pendency of litigation with RBS Holdings (as G&F Delaware had by this time been renamed) over non-payment by G&F NY of the purchase amount for the company.  The transfer appears to have been engineered by the principal creditor for G&F NY and GFL, CBC, for the apparent purpose of concealing assets from RBS (and perhaps F&S).[3]

GFL commenced suit on December 15, 2009, seventeen months after the license was terminated.  At the April 9 initial conference, the Court granted GFL's request to file an amended complaint.  On March 7, F&S had shared with GFL a declaration from the former COO of Gordon & Ferguson, Larry Latz, setting forth some of the history of the F&S relationship with the actual licensee.  On May 3, F&S further provided GFL with the declaration of Jerry Lavin, the prior owner of both F&S and Gordon & Ferguson.  Referencing these declarations, GFL requested an extension of time to file its amended complaint until May 21.  (See May 6 letter to Court, Dkt No. 28.)

A.      **Ownership of the Field & Stream Trademarks**

The FAC departs in certain key respects from certain admissions of the original complaint.  The original complaint alleged (inter alia) that "Pursuant to the License Agreement, Plaintiff holds the exclusive rights to certain trademarks owned by Field & Stream LLC" (emphasis added) (Compl. ¶2).  This admission has been dropped from the FAC (¶3).  Similarly, whereas the original complaint alleged that F&S is "the owner" of five enumerated registrations for the mark FIELD & STREAM (Compl. ¶30), the FAC now avers only that F&S is the "registered owner" of the marks (¶55).  And the operative allegation in each cause of action has

_____

[3] Contrary to the allegation of the FAC (¶ 62), although F&S has no knowledge of what amounts of credit CBC extended to G&F NY for its operations, which also included licenses to Rockawear, Tahari, Joseph Abboud, Jhanes Barnes, Nicolle Miller (Moskin Decl. Ex B), F&S are aware that G&F NY never paid for the acquisition of the company (including the license) from G&F Delaware.  (Joint Preliminary Pre-Trial Statement, Section f at p. 26 ¶ 8.)

NYC_802331.2

now been restyled to cast GFL as having a "discrete ownership interest" rather than being merely an "exclusive Licensee" (Compare Comp. ¶¶ 105, 108, 117, 133, 148 with FAC ¶¶ 144, 151, 160, 186, 206.)

The license agreement (FAC Ex. A) repeatedly affirms F&S's ownership of the FIELD & STREAM marks.  The Premises acknowledge (as the very first premise of the agreement) that "F&S is the owner of the trademarks 'Field & Stream', 'Field and Stream'…and 'Fieldstream' (the 'Licensed Marks') for apparel and accessories and United States and foreign trademark registrations thereof as shown on Exhibit A attached hereto."  Paragraph II(A) further provides that "F&S represents, and warrants to and covenants with Licensee that with respect to trademarks and United States Federal Registrations thereof, it is the owner of all right, title and interest in and to the Licensed Marks and Registrations thereof …"  Paragraph III(A) goes on to say that:

> Licensee shall make no use of the Licensed Marks except as specifically authorized herein and <u>any use of the Licensed Marks by Licensee shall inure to the benefit of F&S for purposes of trademark ownership</u>.  Licensee shall make no claim of ownership of the Licensed Marks, or any confusingly similar mark, in the United States or any foreign country, and shall not contest the validity of any Licensed Mark, or any registration thereof, nor benefit under this Agreement or otherwise, from any of its activities hic adversely affect the validity of the Licensed Marks or any registrations thereof anywhere in the world. (Emphasis added.)

Paragraph III(B) provides that:

> Licensee shall not initiate any litigation, whether or not with others, which contests the validity of the Trademarks or F&S's rights in and to the Trademarks. The use of the Trademarks pursuant to this Agreement shall be for the benefit of F&S for purposes of trademark ownership, and shall not vest in Licensee any title to or right or preemptive right to continue said use except to the extent granted in the Agreement.

Section V sets forth numerous quality requirements, assuring F&S the right to control the quality of any goods produced by the licensee, including minimum quality standards (¶ V(C)) and the right to inspect goods and manufacturing facilities (¶ V(B)).

Section XI establishes that the licensee has no right to sue to enforce the Licensed Marks in the event of infringement but must notify F&S of any infringements so as to allow F&S to pursue any such claims in its own name.  Only if F&S declines to take any action is the licensee permitted to sue, but even then must "keep F&S advised in advance of its intention in such action and consult with F&S with respect thereto …"

Section XII provides that "Licensee may not assign, sublicense, or otherwise transfer any rights or permit any use of the Licensed Marks, …without the prior written consent of F&S." The provision goes on to say that once the Licensee has met the threshold of $1.5 million in royalty payments, it can then assign or create security interests in its own Gordon & Ferguson marks (i.e., those specified in Section VIII of the agreement), but the licensee never acquires a similar right to transfer rights in the License Agreement without F&S's consent.

In a public Internet posting by G&F NY, plaintiff's alleged immediate predecessor, the company identifies numerous licenses it held, including the Field & Stream license.  However, the only brands in which it asserted ownership were "Toma", "Lifticket" and "Format". (Moskin Decl. Ex. B.)

## **ARGUMENT**

### A.     **Counts 1 and 2 Should Be Dismissed Because Plaintiff Is Not a De Facto Owner of the FIELD & STREAM Trademark**

Plaintiff's new contention that it should be deemed de facto owner of the FIELD & STREAM marks for outerwear is contrary to the original Complaint, which admitted that F&S is the owner of the subject FIELD & STREAM marks, as well as each of the subject federal registrations for the marks pleaded in the Complaint (Compl. ¶¶2, 15, 30.)  Plaintiff can not create an issue of fact simply by disregarding its prior admissions.  See Wallace v. New York City Dep't of Corr., No. 95 CV 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (granting motion to dismiss where "plaintiff blatantly changes his statement of the facts in order to respond

to the defendants' motion to dismiss.   In this amended complaint, the plaintiff directly contradicts the facts set forth in his original complaint.  This court accepts the facts as described in the original complaint as true…"); Colliton v. Cravath, Swaine & Moore LLP, No. 08 Civ 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (accepting the facts as alleged in the original complaint as true and granting motion to dismiss in its entirety where plaintiff made a "transparent attempt" to amend his pleadings to avoid a dispositive defense); Kant v. Columbia Univ., No. 08 Civ 747 (PGG), 2010 WL 807442, at *6-8 (S.D.N.Y. Mar. 9, 2010) (denying leave to file a third amended complaint and granting motion to dismiss where plaintiff's statements in the third amended complaint, which surfaced ten months after the original complaint was filed, and after defendant had moved to dismiss, strongly suggested bad faith.) The bare artifice of the FAC in ignoring GFL's prior admissions to advance a theory of *de facto* trademark ownership is a transparent attempt to circumvent defendants' prior motion to dismiss the trademark infringement claims.  Accordingly, this Court should accept as true the allegations and admissions as to ownership of the trademark found in the original complaint.

Moreover, the new theory of *de facto* ownership can not possibly be reconciled with numerous provisions of the License Agreement (FAC Ex. A) recited above, all of which are directly contrary to the new contention.  Among other provisions, the premises, the warranties and Section III, regarding "Use of the Licensed Marks", all confirm F&S's ownership and preclude plaintiff from "contest[ing] the validity of the Trademarks or F&S's rights in and to the Trademarks."   Section III(B) further confirms that "use of the Trademarks pursuant to this Agreement shall be for the benefit of F&S for purposes of trademark ownership, and shall not vest in Licensee any title to or right or preemptive right to continue said use except to the extent granted in this Agreement".   Under Section XII, the Licensee has no right to transfer or sub-license any rights without F&S's consent, and even if the secret 2007 assignment to plaintiff had

8

been effective to transfer any rights to plaintiff, the Licensee's right to use remains subject to F&S's right to control quality.

Further, GFL's claimed predecessor, G&F NY, while purporting to be the owner of various brands, held itself out publicly as being only a licensee of the FIELD & STREAM mark. (Moskin Decl. Ex B.)  Nor was the new ownership theory mentioned in GFL's January 14 letter to Judge Gardephe.  Indeed, the theory plainly is nothing more than a post hoc construct cobbled together in recognition of the incoherence of plaintiff's original theory that F&S and its licensees were infringing F&S's own trademarks.

Calvin Klein Jeanswear Co. v. Tunnel Trading, 2001 WL 1456577, at * 4 (S.D.N.Y. 2001), summarized the cases confirming that a licensor's reservation of contractual rights far narrower than those reserved to F&S precludes a finding that the licensee is a de facto assignee. See also Gruen Marketing Corp. v. Benrus Watch Co., 955 F. Supp. 979, 982-83 (N.D. Ill. 1997) (no de facto assignment where license agreement required licensee to obtain approval from licensor for certain uses of the mark; licensor reserved some rights to sell and use the mark on certain products; agreement required licensor approval for assignment of licensee's rights, and license agreement contained a provision explicitly stating that licensor was the owner of all right, title and interest in and to the mark); Finance Inv. Co. v. Geberit AG,  165 F.3d 536, 532-33 (7th Cir. 1998) (no assignment where license included rights and duties inconsistent with assignment, such as geographic limitations on licensee's territory).

Rather than address the actual language of the 1988 license, plaintiff's FAC simply misquotes the agreement.  For instance, although F&S explained in a July 22, 2009 letter, quoted in the prior motion (2/3/10 Moskin Decl., Dckt No 17, Ex. B) and in the Joint Preliminary Pre-Trial Statement (p. 25, ¶ 7), that Section XII of the 1988 Agreement merely permits the licensee to assign freely its own "GORDON & FERGUSON" trademarks once the licensee reaches the

9

$1.5 million threshold, plaintiff continues to ignore the plain language of the Agreement, the actual terms of which it has never disputed or even addressed in the twenty-two months since the agreement was terminated.  Similarly, although the license here expressly provides that the licensee has <u>no right to sue even infringers</u> unless F&S consents (or refuses to sue), by some alchemy plaintiff contends that this express <u>limitation</u> on the licensee's right to bring suit (and express recognition of F&S's superior rights as trademark owner) somehow proves that the licensee can freely sue anyone, even its licensor, because it would be futile to seek permission to flout the obvious purpose of the agreement.  (FAC ¶¶ 31, 136.)  The contract being part of the complaint, the court plainly is not bound by plaintiff's misquotation of that language.  <u>Reinhardt</u> v. <u>Wal-Mart Stores, Inc.</u>, 547 F. Supp. 2d 346, 354 (S.D.N.Y. 2008) (granting motion to dismiss on claim for copyright infringement as a matter of law where plaintiff attempted to draw distinctions that varied from the most reasonable reading of the contract, which placed on plaintiff the burden it could not meet of justifying the variance); <u>Medtech Products Inc.</u> v. <u>Ranir, LLC</u>, 596 F. Supp. 2d 778, 807 (S.D.N.Y. 2008) (interpretation of unambiguous contract a question of law suitable for disposition on a motion to dismiss).  On a motion to dismiss, the Court can, of course, "…consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, … and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  <u>ATSI</u> v. <u>Shaar Fund</u>, 493 F.3d at 98.

Moreover, even beyond GFL's admissions and the express terms of the license agreement, Section 33(a) of the Lanham Act, 15 U.S.C. § 1115(a), provides that a federal trademark registration creates a presumption of ownership, and Section 33(b) provides that where, as here, a registration is incontestable, as all of F&S's are, such registration is <u>conclusive</u> evidence of ownership. 15 U.S.C. § 1115(b).  F&S's registrations are relevant for two further

reasons.  First, it turns logic on its head to suppose that when, immediately prior to creating the 1988 license agreement, Jerry Lavin divided up ownership of the two companies he had owned, Gordon & Ferguson Merchandising and Field & Stream Licenses (Lavin Dec. ¶2), he would, in 1988, have had Gordon & Ferguson Merchandising assign the FIELD & STREAM registrations to F&S as a way of making the new licensee entity, G&F Delaware (rather than F&S) the owner. Had he wanted to make G&F Delaware the owner, he could have arranged for the registrations to be assigned to it rather than F&S.  Further, because the license only confers a right to use the mark on narrowly defined types of outerwear, whereas the registrations each cover a range of other products,[4] there is no legal basis (or means) to divide up the registrations to break out the small parts GFL now claims to own without destroying the registrations themselves.  Put differently, F&S's ownership of the trademark FIELD & STREAM for outerwear is simply a small part, and is inseparable from, its broader ownership of the mark for a full range of clothing products, as well as camping and other goods.  GFL cannot cherry pick the parts of the registrations it now wishes to own.

Withal, because GFL does not even <u>allege</u> that it or its claimed predecessors has used the FIELD & STREAM trademark in commerce for more than three years (<u>i.e.</u> since 2005), even if it ever had a claim to ownership, by statute, it has presumptively now abandoned any such rights. 15 U.S.C. § 1127 (presumption of abandonment after three years' non-use); <u>Silverman</u> v. <u>CBS, Inc.</u>, 870 F.2d 40, 47-48 (2d Cir. 1989), <u>cert</u>. <u>denied</u>, 492 U.S. 907 (1989) (CBS abandoned the Amos & Andy trademark where its only use was in documentaries, i.e., not as a trademark on products); <u>Pilates, Inc.</u> v. <u>Current Concepts, Inc.</u>, 120 F. Supp. 2d 286, 307 (S.D.N.Y. 2000) (owner abandoned trademark for non-use).

---

[4] The registrations attached to the FAC itself, cover numerous products other than outerwear, including clothing and accessories generally, backpacks, sweaters, shirts, pants, shorts, suits, skirts, blouses, underwear, hats, scarves, ties, etc. (FAC Ex. B)

NYC_802331.2

As a result, Counts 1 and 2 (seeking a declaration that plaintiff has a "discrete ownership interest" in the FIELD & STREAM marks) should be dismissed.  Neither count even sets forth a basis for the Court to entertain subject matter jurisdiction.  Count 2 should be denied for the further reason that it fails to allege a justiciable controversy, there being no allegation that GFL has even applied to register the trademark FIELD & STREAM, whereas the only statutory basis for such a declaration, 15 U.S.C. § 1119, is limited to declarations of rights in issued registrations.  GMA Accessories, Inc. v. Idea Nuova, Inc., 157 F. Supp. 2d 234, 241 (S.D.N.Y. 2000).

**B.  Count 6 of the Complaint Fails To Allege False Advertising**

A claim for false advertising arises under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B), which provides that:

> Any person who …(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Minimally, the elements of a claim for false advertising under Section 43(a)(1)(B) are: (1) a representation of fact in interstate commerce; (2) that the statement materially misrepresents an inherent quality or characteristic of the plaintiff's or defendant's own or goods or services; (3) in commercial advertising or promotion; and that (4) the plaintiff has been injured thereby.  See, e.g., National Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2nd Cir. 1997); 5 J Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 27.24 (2009).  The elements of false advertising under Section 43(a)(1)(B), quoted above, fundamentally differ from infringement of unregistered marks under Section 43(a)(1)(A)[5].  See, e.g., Rocky Brands, Inc. v.

---

[5] Section 43(a)(1)(A) creates liability against "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol,

NYC_802331.2

Red Wing Shoe Co. Inc., 2008 U.S. Dist. LEXIS 87031, *26 (S.D. Ohio Oct. 27, 2008)("It is readily apparent that the essential elements for a Lanham Act claim for false advertising bear little resemblance to the factors examined to determine likelihood of confusion, and, thus, trademark infringement.")

The FAC (¶ 89 et seq.; ¶ 168 ) includes three types of alleged advertising claims (addressed below), none of which identifies any specific false statements (in interstate commerce) by any defendants that are alleged to materially misrepresent any inherent qualities or characteristics of the plaintiff's or defendants' own or goods or services. GFL thus fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 1953  (2009) (stating that the Supreme Court's "decision in Twombly[6] expounded the pleading standard for 'all civil actions'").

The first allegedly false "statement" in the FAC is that F&S has not acknowledged publicly that GFL is a current licensee. (FAC ¶ 91.)  However, even if GFL were a current licensee (which assumes both that the secret transfer to it of the agreement without F&S's consent was valid and that F&S lacked proper grounds to terminate), the FAC sets forth no legal theory (and F&S is aware of none) under which merely not making a given statement is a falsehood.  Put differently, although the law does in some narrow instances impose a duty to

---

or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

[6] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

NYC_802331.2

speak in the context of commercial advertising[7], the FAC sets forth no factual or legal grounds to charge F&S with an affirmative duty to say anything about GFL. It certainly does not constitute a "statement of fact capable of being proven false." Although the Court need not resolve the issue on this motion, the fact is that even if F&S had made any such affirmative statements that GFL is not the licensee, GFL never obtained F&S's consent to acquire rights under the license and the license was indeed terminated in 2008. It is not F&S's licensee.

The second alleged falsehood pleaded in the FAC is that F&S has made false statements that Otto _is_ a current licensee. However, the statement that Otto is a current licensee is unassailably true. GFL itself admitted as recently as February 24, when it opposed F&S's prior motion to dismiss, that "there is no question that Field & Stream authorized the goods" (G&F Brf, Dckt No. 20 at 14), and "Plaintiff does not dispute the fact that Field & Stream is the source of the goods at issue." (Id. at 15.)

Similarly, both the original complaint and the FAC repeatedly admit that F&S licensed Otto to sell certain products under the Field & Stream brand, "including Outerwear, and to launch a website devoted to the sale of such clothing." (See FAC ¶ 102.) Yet, the FAC asserts that Otto somehow falsely advertised its products bearing the FIELD & STREAM marks by marketing such outerwear on a website and in a catalog and causing such products to be sold and shipped to customers. (FAC at ¶¶ 103-117). Plaintiff's allegation that the license granted to Otto by F&S was somehow "illegal" (FAC ¶¶ 118-120) might, at best, give rise to a breach of contract claim against F&S. It does not, however, support a false advertising claim against either Otto or F&S.

---

[7] For instance, the FTC recently adopted regulations of commercial endorsements by requiring that "When there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (_i.e._, the connection is not reasonably expected by the audience), such connection must be fully disclosed.") _See_ 16 C.F.R. § 255.5

NYC_802331.2

The third and final alleged falsehood set forth in the FAC is that F&S has made statements that it is the owner of the FIELD & STREAM marks.  (FAC ¶ 97.)  Once again, however, such statements not only are true, but GFL itself made the same assertions it now contends are somehow false in its own original Complaint!  Its alleged predecessor said the same on its website. (Moskin Decl. Ex B.)  GFL's irresponsible allegations are also directly contrary to repeated express provisions, quoted at length above (supra p. 6-7), of the very 1988 license under which GFL seeks to establish rights.  Given the representations of GFL's own complaint that F&S is indeed the owner of the trademarks and five registrations therefor, is hard to fathom the basis for the allegation of the FAC that F&S somehow is not permitted to "represent[] to the public that it has an ownership interest" in the marks for apparel. (FAC ¶ 97.)

Further illuminating the frivolousness of GFL's new claims, the FAC also alleges that F&S has made the accused (truthful) statements holding itself out as owner of the FIELD & STREAM trademark for the supposed purpose of competing unfairly with GFL.  (FAC ¶ 98.)  Yet the complaint does not even contend that GFL or its purported predecessor have actually marketed or sold a single garment since 2005 (FAC ¶ 41), two years before GFL even purports to have acquired the license.  That GFL exists only on paper and conducts no business from the residential apartment listed as its address in the FAC (¶ 11) further confirms GFL's inability to allege or prove competitive harm sufficient to state a claim for false advertising.  See Gordon & Breach Science Publishers S.A. v. Am. Institute of Physics, 859 F.Supp. 1521, 1536 (S.D.N.Y. 1994) (identifying  as one of the elements of false advertising that there be commercial speech "by a defendant who is in commercial competition with the plaintiff").  Accord, Jack Russell Terrier Network of North. Cal. v. Am. Kennel Club, Inc., 407 F.3d 1027, 1037 (9th Cir. 2005) (false advertising claim requires "(1) a commercial injury based upon a misrepresentation about

15

a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant.").[8]

As F&S previously argued (3/8/10 Reply Brf, Dckt No. 23), GFL's effort to convert its original meritless claims for trademark infringement into a claim for false advertising is simply its recognition of the frivolousness of the trademark claims given the Second Circuit's controlling decision in Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 277 F.3d 253 (2d Cir. 2002), that a licensee can have no claim against its licensor for trademark infringement (i.e., likelihood of confusion as to source of origin) even though it may possibly have a claim (under appropriate facts) for false advertising.[9] Here, there are no such facts. Although the elements of a false advertising claim differ from the elements of an infringement or unfair competition claim (supra n. 5 and accompanying text), GFL has not satisfied the particular requirements of a false advertising claim. Count 6 of the FAC thus should be dismissed.

---

[8] See also, S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561, 575 (7th Cir. 1993) ("to have standing to allege a false advertising claim, however, the plaintiff must assert a discernible competitive injury. Because Heath is not in the computer business and thus is not a competitor of AT & T, Heath does not have standing to raise the false advertising claim." (internal citation omitted.))

[9] In Twentieth Century Fox, Fox Films alleged that Marvel's TV series "Mutant X" was an unauthorized "spin-off" of the "X-Men" movie. The parties' license agreement expressly precluded Marvel from producing, distributing or exploiting any live-action motion picture without Fox's consent. When Marvel stated in advertising that "Mutant-X" was a spin-off of the Fox movie, the court allowed the contract and false advertising claims to proceed, but concluded:

> To the extent that Fox is alleging that the Defendants are falsely designating the origin of the TV series, the claim was properly dismissed. The District Court was correct in noting that the "origin" of the series (and the film), within the meaning of trademark law (i.e., the source of the goodwill inhering in the trademarks that Marvel licensed to Fox), is Marvel, the owner of the marks.

277 F.3d at 259. Similarly, Mastercard Int'l Inc. v. Sprint Comm. Co., No. 94 Civ. 1051, 1994 WL 97097 at *3 (S.D.N.Y. 1994), previously cited by GFL, held that one licensee could not sue another for infringement (i.e., likelihood of confusion as to source) but could sue for false advertising based on the false impression Sprint was officially sanctioned by the World Cup Soccer Tournament. Although Mastercard Int'l offered no analysis as to the scope of the plaintiff's right to sue for false advertising, plaintiff admits there is no question here that the licensees are officially sanctioned by F&S. The case is simply inapposite.

NYC_802331.2

**C.     Counts 5 and 7-13 Should be Dismissed Because Defendants F&S and Otto Can Not Infringe F&S's Own Trademark**

As a matter of law, given the very definition of a trademark as a designation of source of origin, and the legal test of infringement requiring proof of a likelihood of confusion as to source of origin, a trademark owner cannot be guilty of infringing its own marks; nor can its authorized licensee be guilty of infringing the owner's marks. Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 277 F.3d 253 (2d Cir. 2002). Accord, TAP Publ'ns, Inc. v. Chinese Yellow Pages (New York) Inc., 925 F. Supp. 212, 217 (S.D.N.Y. 1996); Ballet Makers, Inc. v. U.S. Shoe Corp., 633 F. Supp. 1328, 1335 (S.D.N.Y. 1986); Silverstar Enters., Inc. v. Aday, 537 F.Supp. 236 (S.D.N.Y. 1982).[10] For the same reason, no claim for dilution can be asserted by a purported licensee against the owner of the mark or its authorized licensees. See Louis Vuitton Malletier v. Dooney & Bourke, 525 F. Supp. 2d 558 (S.D.N.Y. 2008):

> Consumer confusion occurs when consumers perceive two similar marks as referring to the same source.  Trademark dilution by blurring occurs when consumers perceive two identical (or very similar) marks as referring to different sources.

Id. at 593.[11]

---

[10] See also Houbigant, Inc. v. ACB Mercantile, 914 F. Supp. 964, 990 (S.D.N.Y. 1995) (no Lanham Act claims where the trademark registrant had approved license agreements with both licensees and, thus, there was "no confusion as to source"). Accord, ICEE Distribs., Inc. v. J&J Snack Foods Corp., 445 F.3d 841, 847 (5th Cir. 2006); MJ & Partners Restaurant Ltd. Partnership v. Zadikoff, 10 F.Supp.2d 922, 928 (N.D.Ill. 1998). GFL did previously cite Burma-Bibas, Inc. v. Excelled Leather Coat Corp., 584 F. Supp. 1214, 1216-17 (S.D.N.Y. 1984), However, in Ballet Makers, this court expressly questioned "the vitality of the holding in Burma-Bibas." Ballet Makers, 633 F. Supp. at 1332. Even Burma-Bibas itself mentioned Silverstar Enters. With approval, but citing an allegedly unique aspect of the leatherwear trade, declined to dismiss. Although GFL makes no similar allegation here of anything unique to the outerwear trade, to the extent Burma-Bibas is contrary to Twentieth Century Fox and the more recent cases cited by F&S, it can not be considered good law.

[11] State law essentially tracks the Lanham Act in the areas of, inter alia, unfair competition, trademark infringement, and dilution. See, e.g., Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F.Supp.2d 402 (S.D.N.Y. 2006) ("State law largely tracks federal law in this area [under the Lanham Act], and although there are some differences, for purposes of these

NYC_802331.2

Regarding the goods sold by F&S's licensee, Otto, GFL previously admitted "that Field & Stream authorized the goods" (2/24/10 GFL Brf at 14) and "that Field & Stream is the source of the goods at issue." (Id. at 15.)  By definition and as a matter of law, a trademark designates the source or origin of goods.  15 U.S.C. § 1127.[12]  As such, the Second Circuit held in Twentieth Century Fox that, as a matter of law, a trademark owner cannot be guilty of infringing its own mark.  For the same reason, the trademark owner's authorized licensees can not be guilty of infringement for selling genuine goods.  Simply put, the licensor and licensee can not both be and not be the source of their own authorized goods.  Counts 5 and 7-13 of the FAC are internally contradictory and cannot stand.

Disregarding the distinction between a suit against an infringer (whose goods do not come from the authorized source of origin) and a suit against the actual source of origin (the trademark owner), plaintiff previously cited numerous cases in which a licensee had standing under Section 43(a) of the Lanham Act to sue an infringer or party otherwise exceeding its authority as licensee.[13]  In none of these cases was the plaintiff suing the trademark owner or a

---

motions [to dismiss], I do not discuss the state law claims separately."); Bristol-Meyers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1048 (2d Cir. 1992) (applying same likelihood of confusion analysis to claims under New York law as to claims under Lanham Act); Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F.Supp.2d 410 (S.D.N.Y. 2002) (noting similarities between federal and state antidilution law); Avon Prods., Inc. v. S.C. Johnson & Son, Inc., 984 F.Supp. 768 (S.D.N.Y. 1997) ("The standards for bringing a claim under § 43(a) of the Lanham Act are substantially the same as those applied to claims brought under ...§ 349 and 350 of the New York General Business Law.").  Consequently, for the same reasons that Plaintiff's federal trademark-related claims should be dismissed, its state law trade-mark related claims against F&S and Otto should also be dismissed.

[12] "The term "trademark" includes any word, name, symbol, or device, or any combination thereof [used in commerce], to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." (Emphasis added.)

[13] See, e.g, Quabag Rubber Co. v. Fabian Shoe Co., 567 F.2d 154 (1st Cir. 1977) (and other cases cite at pages 8-9) and G.H. Mumm Champagne v. E. Wine Corp., 142 F.2d 499 (2d Cir. 1944) (and other cases cite at page 20).

NYC_802331.2

licensee acting within the scope of its authority or arguing, in effect, as GFL does here, that the source of origin of authorized goods was also <u>not</u> the source of origin of the subject goods.

Plaintiff previously cited <u>Piccoli A/S</u> v. <u>Calvin Klein Jeanswear Co.,</u> 19 F.Supp.2d 157 (S.D.N.Y. 1998), where one licensee was permitted to sue other licensees (not the trademark owner) who were acting outside the scope of their own licenses with Calvin Klein and in violation of the license terms by dumping jeans outside their permitted territory in plaintiff-licensee's territory of Scandinavia. By contrast, plaintiff here admits that F&S's licensee, Otto, is authorized by F&S to sell the subject goods. <u>Piccoli A/S</u> expressly distinguished <u>TAP Publ'ns</u> and <u>Silverstar Enters</u>, because the licensees, by exceeding their own contract rights, were selling <u>unauthorized</u> goods, a form of unfair competition. 19 F. Supp. 2d at 169. Because plaintiff concedes here that the licensee's conduct is authorized by the trademark owner, F&S, GFL's only possible claim (such as it is) thus is against F&S for breach of contract for termination of the subject license, not against F&S's authorized licensee, which is only doing what F&S has authorized it to do.[14]

The simple fact is this is a contract dispute whether plaintiff ever acquired any rights as licensee when the license was assigned without F&S's consent or whether F&S properly

---

[14] <u>N.F.L. Properties, Inc.</u> v. <u>Dallas Cowboys Football Club, Ltd.,</u> 922 F.Supp. 849 (S.D.N.Y. 1996), also cited by plaintiff, involved the largely sui generis relationships among the 30 clubs that comprise the NFL. The court acknowledged the general rule that "where the trademark owner, who is the source of the goods, authorizes use of the mark for 'genuine goods', there can be no likelihood of confusion as to <u>source</u> of the goods…" <u>Id.</u> at 854-55, <u>citing</u> <u>Silverstar Enters.;</u> <u>Ballet Makers</u>, and <u>L.G.B., Inc.</u> v. <u>Gitano Group, Inc.,</u> 769 F. Supp. 1243, 1249 (S.D.N.Y. 1991). However, when one club (the Dallas Cowboys) sought to license the team marks outside the framework of the general trust agreement governing all the clubs, the court said it could create the false impression the NFL had sponsored or approved the use of the NFL's marks by the third parties (Nike, Dr. Pepper and Pepsi). The court also concluded this risk was unique to sponsorship of services and would not apply to licensing of goods (as here). <u>Id.</u> at 855. Perhaps more important, the license granted by the Dallas Cowboys there appeared to be in violation of a concededly valid agreement among all the teams that the plaintiff had a right to enforce, whereas here, GFL has no contractual right to come between F&S and its licensees who are simply doing what F&S has authorized them to do.

NYC_802331.2

terminated.  If plaintiff can show facts (which thus far it has declined to reveal) showing why the notice and consent provision of the license agreement should be set aside or why the termination was improper, it might have a claim for breach of contract, with a possible remedy in damages. However, the "mere fact that a trademark was the subject of a contract does not convert a state-law breach of contract issue into a federal Lanham Act claim." TAP Publ'ns, 925 F. Supp. at 217.  As a result, Counts 5 and 7–13 should be dismissed.

Because the FAC does not even allege any ongoing sales (even by GFL's purported predecessors) since 2005, a further reason no claim can exist is that even a registered mark cannot be enforced without any use in commerce in actual competition with the accused infringer. Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358, 364 (2d Cir. 1959). See, In re Casino de Monaco Trademark Litigation, No. 07 Civ. 4802 (DAB) 2010 U.S. Dist. LEXIS 33950 at *19-21 (S.D.N.Y. Mar. 31, 2010). As is sometimes said, no trade, no mark.  GFL has no trade and thus has no basis to enforce any trademark rights.

### D.      Counts 14 and 15 Are Barred By The Statute of Limitations, Laches and Acquiescence, And Fail to State Claims for Which Relief Can Be Granted

As set forth in the declarations of Jerry Lavin and Larry Latz, Costco has been selling lined, heavy weight flannel shirts under the FIELD & STREAM mark since 1983.  Since 2001, the shirts have been made by Moose Creek.  (Lavin Decl. ¶¶ 3-5; Latz Decl. ¶ 4).  The FAC refers to certain products produced by Moose Creek not bearing the mark FIELD & STREAM (FAC ¶ 218; Ex T) and notes that the FIELD & STREAM shirts still sold by Costco are suitable for chilly weather. (Id. ¶ 219.)  However, while abandoning the claim of trademark infringement against Costco and Moose Creek in the original complaint, the FAC, in Counts 14 and 15, fails to set forth any legal ground for relief against either party now.   Nor does Count 14 – for declaratory relief - set forth any claim against F&S or Otto.  Notably, 28 U.S.C. § 2201-2202 do not create any substantive rights.  Nat'l Union Fire Ins. Co. v. Karp, 108 F.3d 17, 21(2d Cir.

NYC_802331.2

1997) ("The DJA is procedural in nature, and merely offers an additional remedy to litigants.");
B. Braun Medical v. Abbott Labs., 124 F.3d 1419, 1428 (Fed. Cir. 1997) (the Declaratory
Judgment Act does not create new substantive rights, but is a procedural device that provides a
remedy).  The FAC in fact nowhere even mentions the Declaratory Judgment Act.  Indeed, even
if a substantive basis for relief had been specified in Counts 14 and 15, given that GFL does not
even allege that it or its claimed predecessor have engaged in any actual business since 2005
(FAC ¶ 41), there would be no basis for declaratory relief because "a court may not adjudicate a
difference or dispute of a hypothetical or abstract character or one that is academic or moot."
Cat Tech LLC v. TubeMaster, Inc., 528 F.3d 871, 879 (Fed. Cir. 2008).

     Instead, without expressly so-stating, the FAC appears to seek some form of contractual
remedy now, so as to set aside the decision of the original licensee, G&F Delaware, to decline to
exercise its right of first refusal to take up the shirt license in 2001 or on earlier occasions (FAC
¶ 216, Ex S) notwithstanding that any such contractual claim would be plainly barred under the
six-year statute of limitations under Minnesota law, Minn. Stat. § 541.05(1), or under New York
law, CPLR § 213(2).  Even if the FAC had stated any cognizable or coherent trademark-related
claim against Costco or Moose Creek,  such a claim would be barred now under the doctrines of
laches,   see, e.g., Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996)
(presumption of laches barring equitable relief where delay exceeds most closely parallel statute
of limitations); and acquiescence, see, e.g., Profitness Physical Therapy v. Pro-Fit Orthopedic,
314 F.3d 62 (2nd Cir. 2002) ("continued silence by Pro Fitness in response to defendant's
proposed name change constituted an implicit assurance that trademark rights would not be
asserted, thereby reasonably "induc[ing] reliance by the defendant.").  As the court there noted,
"a plaintiff communicates active consent by conduct that amounts to an explicit or implicit
assurance that plaintiff, with knowledge of defendant's conduct, will not assert its trademark

rights."  Id. at 68.  G&F Delaware made clear nine years ago that it was not interested in licensing the Field & Stream marks for anything other than outerwear.  It is too late for GFL (even if it were a genuine successor to G&F Delaware) to challenge F&S's longstanding business with Costco selling heavyweight shirts.

### E.      The Court Lacks Subject Matter Jurisdiction Over Counts 3 and 4 of the FAC

If the Court dismisses Counts 1-2 and 4-15 of the FAC, there will be no basis for jurisdiction over the remaining two claims (3 and 4) for breach of contract or other state law claims.  The only basis for subject matter jurisdiction in the action is under the Lanham Act.  There is no diversity of jurisdiction over the contract claims or other state law claims.

### CONCLUSION

For the foregoing reasons, the FAC should be dismissed in whole or in part, including all claims against the licensees Otto, Costco and Moose Creek, together with such other and further relief as the Court may deem just and proper.

Dated:    June 11, 2010                     Respectfully submitted,

                                            By:  s\Jonathan Moskin
                                                 Jonathan E. Moskin
                                                 FOLEY & LARDNER LLP
                                                 90 Park Avenue
                                                 New York, New York 10016
                                                 Telephone:  (212) 682-7474
                                                 jmoskin@foley.com
                                                 *Attorneys for Defendants*

*Of Counsel:*

Alicia Pitts, Esq.
FOLEY & LARDNER LLP

Kermit D. Marsh, Esq.
The Law Offices of Kermit D. Marsh
9550 Warner Avenue, Suite 250
Fountain Valley, California 92708
(714) 593-2321
*Attorney for Moose Creek, Inc.*

22