UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

G&F LICENSING CORP.,

       Plaintiff,

  -v-                                           No.  09 Civ. 10197 (LTS)(GWG)

FIELD & STREAM LICENSES CO., LLC,
et al.,

       Defendants.

-----------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

       Plaintiff G&F Licensing Corp. ("Plaintiff" or "GFLC") brings this action against Field & Stream Licenses Co., LLC ("FSLC"), Otto International FS, LLC ("Otto"), Costco Wholesale Corp. ("Costco"), and Moose Creek Inc. ("Moose Creek," and together with the other defendants, "Defendants"), asserting claims for trademark infringement, dilution, false designation of origin, and false advertising, in violation of Sections 32 and 43 of the Lanham Act, 15 U.S.C., §§ 1114 and 1125, as well as a number of New York state law claims, and seeks a declaratory judgment as to the effect of a license agreement on the parties' rights to the marks at issue and a permanent injunction against Costco's and Moose Creek's manufacture and sale of certain products.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.  Defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the amended complaint (the "Amended Complaint") for failure to state a claim.  The Court has considered thoroughly the parties' submissions.  For the following reasons, Defendants' motion to dismiss the Amended Complaint is granted.

BACKGROUND

The following facts are derived from the allegations in the Amended Complaint, which are construed as true for purposes of the instant motion practice. The Gordon & Ferguson Company ("G&F") was founded as a fur company in 1871 by Richard Gordon and Paul Ferguson. (Am. Compl. ¶ 17.) G&F first registered the name "Field and Stream" as a trademark for clothing in 1926. (Id. ¶ 20.) In 1987 Field & Stream Licenses Company ("F&S"), which was "formerly owned" by Gordon & Ferguson Merchandising Company, a wholly-owned subsidiary of G&F (id. ¶ 21), acquire the rights to all of the "Field and Stream trademarks then owned by [G&F]." (Id. ¶ 22.) On October 28, 1988, F&S and G&F of Delaware ("G&F Del.") entered into a license agreement (the "Agreement") which granted G&F Del. an exclusive license to use, manufacture, and sell "Outerwear" under certain trademarks owned by F&S (the "Licensed Marks"). (See id. ¶ 23; Am. Compl., Ex. A ("Agreement") § 1.) In or about February 2006, G&F Inc. purchased G&F Del.'s rights under the Agreement. (Am. Compl. ¶ 43.) On or about August 25, 2006, F&S was merged into FSLC and, as a result, FSLC became the registered owner of the Licensed Marks. (Id. ¶¶ 54-55.) On or about March 30, 2007, Plaintiff "was assigned" G&F Inc.'s rights under the Agreement. (Id. ¶ 61.)

Plaintiff alleges that, in July 2007, FSLC commenced a "calculated scheme to impermissibly regain control" of the interest in the Licensed Marks that was granted under the Agreement (Am. Compl. ¶ 68), culminating in FSLC's August 4, 2008, termination of the Agreement due to the purported occurrence of an event of default (id. ¶¶ 69-76). FSLC then went on to license the Licensed Marks to Otto for use on Outerwear. (Id. ¶ 92.) Moose Creek manufactures and Costco sells "certain flannel clothing products" pursuant to "one or more

license agreements with Defendants." (Id. ¶ 217.) Some of these flannel products constitute "Outerwear" as that term is defined in the Agreement. (Id. ¶¶ 218-221.)

DISCUSSION

In adjudicating a motion to dismiss a complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. See Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).[1]  Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard applies to all civil actions. Iqbal, 129 S. Ct. at 1953.

Plaintiff is Not the *de facto* Assignee of the Licensed Marks

For the purpose of this motion practice, the Court assumes that the assignments by the original parties to the Agreement and subsequent assignees were valid and thus conferred upon Plaintiff the same interest as originally possessed by the Original Licensee.[2]  Plaintiff claims that, pursuant to the Agreement, it is not merely a licensee but an assignee of the marks at issue in this case. Plaintiff argues that, because (1) the Agreement provides an exclusive license,

---

[1]  The Court may also consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit. See Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000).

[2]  The Court acknowledges FSLC's contention that Plaintiff is not a valid assignee of such interest.

(2) Plaintiff pays a license fee of only $1 per year, and (3) certain restrictions on its ability to assign its interest under the Agreement and to encumber its own marks, which are not the subject of this litigation, were (according to Plaintiff) terminated pursuant to the terms of the agreement upon Plaintiff's predecessor-in-interest's payment, in 1991, of license fees totaling $1.5 Million, the Agreement renders it a de facto assignee of the marks.

Plaintiff cites Etri, Inc. v. Nippon Miniature Bearing Corp., No. 85 C 615, 1989 WL 99575 (N.D. Ill. Aug. 18, 1989), and Parkson Corp. v. Andritz Sprout-Bauer, Inc., 866 F. Supp. 773 (S.D.N.Y. 1994), in support of its contention that the Agreement was in fact an assignment. However, those cases involved licensing agreements that contained no meaningful limitations on the interest transferred. See Etri, 1989 WL 99575 at *3 (finding that the agreement, "although entitled a 'License Agreement,' operates as an assignment" because it "transferred to [licensee] all of [licensor's] rights in the use of the trademark" at issue); Parkson Corp., 866 F. Supp. at 774-75 (explaining that, in the patent context, a license agreement that "grant[s] all substantial rights in the patent to the licensee" may constitute an assignment); see also Calvin Klein Jeanswear Co. v. Tunnel Trading, No. 98 Civ. 5408 (THK), 2001 WL 1456577, at *4 (S.D.N.Y. Nov. 16, 2001) (describing Etri as a case in which "the 'licensing' agreement grants to an exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee").

By contrast, the Agreement at issue in this case contains several significant limitations on Plaintiff's interest in, and use of, the licensed marks that remained in effect after the payment of $1.5 Million in license fees. Namely, (1) Plaintiff acquired the exclusive right to use the licensed marks only on "Outerwear," as that term is defined in the Agreement

(Agreement § I); (2) Plaintiff is required to use the marks only in connection with "merchandise of the highest quality;" to permit FSLC to inspect its manufacturing facilities and items in the process of manufacture; to submit to FSLC samples of "items proposed to be sold;" and to discontinue or correct any item to which FSLC "reasonably object[s]" as being of inferior quality (Agreement § V); (3) Plaintiff is required to pay a license fee of $1 per year (Agreement § VI(D)); and (4) Plaintiff is not permitted to prosecute a trademark infringement claim unless it first notifies FSLC of its belief that an infringement of the licensed marks has occurred and FSLC declines to take action to stop such infringement within thirty days of receipt of the notice, and if Plaintiff does prosecute an infringement claim it is required to "keep [FSLC] advised" and to "consult with [FSLC] with respect to" the action, and may not settle the action without FSLC's written approval (Agreement § XI(A)).

    Also of significance is the section entitled "Use of Licensed Marks" (Agreement § III), which provides, <u>inter alia</u>, that "[l]icensee shall make no claim of ownership of the Licensed Marks . . . and shall not contest the validity of any Licensed Mark, or any registration thereof . . . ." (Agreement § III(A)); "[l]icensee shall not initiate any litigation . . . which contests the validity of the Trademarks or [FSLC]'s rights in and to the Trademarks" (Agreement § III(B)); "[t]he use of the Trademarks pursuant to this Agreement . . . shall not vest in [l]icensee any title to or right or preemptive right to continue said use except to the extent granted in this Agreement" (<u>id.</u>); reserved for FSLC the right to advertise Plaintiff's "Licensed Products" (Agreement § III(D)); and that Plaintiff must obtain FSLC's approval before using "type scripts" other than those already in use by the Original Licensee at the time of the Agreement (Agreement § III(E)). The section entitled "Events of Default" (Agreement § X), also includes limitations on

the licensee's right to use the marks as it permits the licensor to terminate the agreement upon the licensee's failure to pay the license fee (Agreement § X(B)(1)); the occurrence of any of a number of enumerated events relating to the licensee's solvency (Agreement § X(B)(3) and (4)); or the licensee's "failure to perform, or violation of, any of the terms, conditions, agreements or covenants of th[e] Agreement" (Agreement § X(B)(2)).

These provisions of the Agreement clearly demonstrate that it does not transfer all of the licensor's rights to the licensee. The Agreement grants a mere license and, even after certain restrictions expired upon the payment of $1.5 million in license fees, the nature of the interest granted did not change. See, e.g., Calvin Klein Jeanswear Co., 2001 WL 1456577, at *5 (holding that because the license agreement at issue was not an assignment because it was limited in geographical scope, required licensee to "maintain the quality of the licensed mark," and "contain[ed] numerous explicit representations that it is a license"); Silverstar Enters., Inc. v. Aday, 537 F. Supp. 236, 240 (S.D.N.Y. 1982) (holding that "it [wa]s clear that the licensor retained ownership of the marks" because the license agreement recited "the Licensor's exclusive right, title and interest in and to the [marks at issue]" (citing DEP Corp. v. Interstate Cigar Co., 622 F.2d 621, 623 n.2 (2d Cir. 1980))).

Plaintiff's reliance on Ex parte Teca Corp., 117 U.S.P.Q. 367 (Comm'r Pat. 1958), is equally misplaced. Although that case also involved an exclusive license to use certain trademarks for a license fee of $1 per year, the license agreement contained no other limitation on the licensee's right to use the marks. Furthermore, the Commissioner of Patents held that "the failure to establish a relationship whereby [the licensor] was responsible for the nature and quality of the products in connection with which the mark is used resulted in forfeiture of all

trademark rights by [the licensor]," and that title passed to the licensee, who had been using the marks since that forfeiture.  Ex parte Teca Corp., 117 U.S.P.Q. at 368.  See also 3 McCarthy on Trademarks and Unfair Competition § 14:48 (4th ed. 2010) (explaining that "[u]ncontrolled licensing of a mark [occurs when] the licensee can place the mark on any quality or type of goods or services," that uncontrolled licensing "may result in . . . an 'abandonment' of the trademark," and citing Ex parte Teca Corp. for the proposition that "uncontrolled licensing may result in . . . the licensor [being] estopped from challenging the licensee's uncontrolled use").  The Agreement at issue contained specific quality control and verification provisions, and therefore provides no basis for Plaintiff's claim of forfeiture or abandonment of the licensed marks.  Count 2 of the Amended Complaint is therefore dismissed.

Trademark Infringement, Dilution, and False Designation of Origin

Only the "registrant" of a mark may assert a claim alleging infringement of that mark pursuant to 15 U.S.C. § 1114.  15 U.S.C.A. § 1114 (West 2009).  "The term[] . . . 'registrant' embrace[s] the legal representatives, predecessors, successors and assigns of such . . . registrant."  15 U.S.C.A. § 1127 (West 2009).  Because Plaintiff is only a licensee, its "interest in the trademark arises solely from the contractual relationship between it and [FSLC, the registrant], and such interest is secondary to the registrant's." Silverstar Enters., Inc., 537 F. Supp. at 240.  Plaintiff may therefore assert, at most, a claim for infringement of the licensed marks "on behalf of [FSLC] to enforce the trademark owner's proprietary rights."  Id. at 241.

To the extent that Agreement confers upon Plaintiff the right to bring an infringement claim with respect to the licensed marks (see Agreement § XI(A)), presumably in

the capacity of FSLC's "legal representative," see 15 U.S.C. § 1127, Plaintiff may do so only insofar as such a claim is consistent with FSLC's asserted interest in the licensed marks. Section XI(A) of the Agreement requires Plaintiff to "keep [FSLC] advised" and "consult with [FSLC]" with respect to any infringement action, and requires Plaintiff and FSLC to "cooperate fully" with each other in the case of such an action. "It strains credulity that [FSLC] intended to [facilitate] a lawsuit by [GFLC] against itself" or its (other) licensees, on behalf of itself as the owner of the marks at issue. See Silverstar Enters., Inc., 537 F. Supp. at 240 n. 4.

Plaintiff is also barred from prosecuting other Lanham Act claims, other than for false advertising, relating to the licensed marks. Plaintiff's claim for false designation of origin fails because "the 'origin' of the [products bearing the licensed marks], within the meaning of trademark law (i.e., the source of the goodwill inhering in the trademarks that [FSLC] licensed to [GFLC]), is [FSLC], the owner of the marks." Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 277 F.3d 253, 259 (2d Cir. 2002) (noting that "[the licensee], on the other hand, as [licensor's] licensee, can claim no impairment of goodwill in the . . . property associated with the . . . trademark [at issue]"). Plaintiff's dilution claim suffers from a similar flaw, namely that the "famous marks" that it alleges have been diluted and the marks causing the alleged dilution all belong to FSLC. Thus, as with its false designation of origin claim, the common origin of the marks used by Plaintiff and those use by Defendants defeats the dilution claim.

In short, in asserting the infringement, dilution, and false designation of origin claims, Plaintiff "is not attempting to enforce the registrant's proprietary rights. Rather, the licensee [GFLC] is attempting to enforce its own rights under the License [A]greement. This is a contract dispute and should be brought under a contract theory." Silverstar Enters., Inc., 537 F.

Supp. at 241.  See also Stancato v. Versace, No. 94 Civ. 4192 (JFK), 1995 WL 437532, at *3 (S.D.N.Y. July 25, 1995) (noting, in a case where Plaintiff and Defendant both claimed ownership of the company that owned the marks at issue, that "Plaintiff's rights are in no way dependant on a construction or interpretation of the Lanham Act.  In cases where a contract establishes which party owns a particular trademark, it is the contract and not the Lanham Act that determines the rights of the parties.").[3]  Counts 5 and 7-9 of the Amended Complaint are therefore dismissed.

---

[3]  Plaintiff discusses three other decisions at some length in support of its argument that even if it is only a licensee it may nevertheless prosecute its Lanham Act claims against Defendants.  (See Pl.'s Mem. of Law at 13-15.)  Plaintiff's contentions with respect to these decisions are mistaken.  In Ultrapure Systems, Inc. v. Ham-Let Group, 921 F. Supp. 659 (N.D. Cal. 1996), the licensee plaintiff was found to have standing to sue a competitor who was a former licensee of the same licensor and who was alleged to have exceeded the license under which it had manufactured the product at issue, in part on the ground that the plaintiff's license agreement did not "set forth any restrictions on the licensee's ability to enforce the trademark." 921 F. Supp. at 665-66.  The Court expressly noted that a "licensee lacks standing when provisions in the contract indicate that the licensor retains exclusive ownership of the mark" and that "since the rights of the licensee are based upon the rights of the owner or licensor, infringement actions against the owner are generally prohibited." Id. at 665.  The same logic cautions against permitting an infringement action against a current licensee whose conduct falls within its license.  The mark upon which the licensee was permitted to sue in Brian Jordan & Creative Group Marketing, L.L.C. v. Can you Imagine, Inc., No. 04 Civ. 4696 (AJP), 2005 WL 1119392 (S.D.N.Y. May 12, 2005), was not the licensed mark, but a mark that the licensee allegedly owned.  2005 WL 1119392, at *4 ("[The licensee] claims, however, that it developed the separate trademark 'Airzooka' and is not required by the License Agreement to give that to [licensor] even on termination of the License Agreement.").  Finally, Judge Lasker, who issued the decision in Burma-Bibas, Inc. v. Excelled Leather Coat Corp., 584 F. Supp. 1214 (S.D.N.Y. 1984), which permitted a licensee to maintain an infringement action against its licensor and another licensee, later found that Second Circuit case law "raise[d] a question as to the vitality of the holding in Burma-Bibas," Ballet Makers, Inc. v. United States Shoe Corp., 633 F. Supp. 1328, 1332 (S.D.N.Y. 1986), and held that because the defendant licensee was authorized by the defendant licensor to manufacture and sell the "controversial goods" and the licensor retained control of the quality of those goods, they were "the genuine product" not susceptible to "confusion within the meaning of the statute" and therefore dismissed the plaintiff licensee's infringement and unfair competition claims, 633 F. Supp. at 1335.

False Advertising

Plaintiff is not, however, precluded, simply by virtue of being a licensee, from asserting a false advertising claim against FSLC or its licensee, Otto.  See Twentieth Century Fox, 277 F.3d at 259-60 (noting that "[a] licensee is not without recourse under section 43(a) of the Lanham Act if its licensor makes false claims to promote a competing product (or falsely disparages the licensee's product)," and holding that a false advertising claim may be brought by a licensee against both competitors and its licensor); see also National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd., 922 F. Supp. 849, 854-855, (S.D.N.Y. 1996) (holding that licensee may assert "false sponsorship" claim against licensor); Mastercard Int'l Inc. v. Sprint Commc'n Co., No. 94 Civ. 1051 (JSM), 1994 WL 97097, at *3-4 (S.D.N.Y. Mar. 23, 1994) (holding that licensee may assert "false sponsorship" claim against other licensee).

In order to state a claim, Plaintiff must allege that Defendants have misrepresented their, or Plaintiff's, products or commercial activities, or the association between their products or activities and those of Plaintiff.  See 15 U.S.C. § 1125(a); see also Twentieth Century Fox, 277 F.3d at 259-260; Societe Des Hotels Meridien v. LaSalle Hotel Operating Partnership, L.P., 380 F.3d 126, 132 (2d Cir. 2004) (noting that false advertising claim is properly stated if it alleges false representation disparaging defendant's product or false representation as to plaintiff's own product).  This Plaintiff has failed to do.

Plaintiff's false advertising claim is premised, in part, on FSLC's allegedly "false[] represent[ation] to the public that Plaintiff sponsors or otherwise approves of [Defendants'] products," made "by using the name 'Gordon & Ferguson' . . . on the Field and

Stream Website . . . to advertise the Outerwear." (Pl.'s Mem. of Law at 19.)  However, the Amended Complaint states only that FSLC "exploit[s] th[e] association" between the name "Gordon & Ferguson" and "Field and Stream" "to the detriment of Plaintiff by using the name 'Gordon & Ferguson' (without permission) to promote, market and advertise the infringing Outerwear products."  (Am. Compl. ¶¶ 26, 100, 128.)  Such conclusory statements regarding Defendants' use of, and attempt to associate with, Plaintiff's name are insufficient to state a claim.  C.f. Twombly, 550 U.S. 544.  Furthermore, the Amended Complaint does not even allege that Defendants' exploitation of the association between the names "Gordon & Ferguson" and "Field & Stream" involves any misrepresentation.

Plaintiff's false advertising claim is also based on FSLC's contention that it owns the licensed marks, FSLC's designation of Otto as a licensee, and FSLC's failure to designate Plaintiff as such, which representations Plaintiff characterizes as "falsehoods."  (Pl.'s Mem. of Law at 20.)  The Amended Complaint is indeed replete with allegations that FSLC claims to own the licensed marks and holds Otto, but not Plaintiff, out to the public as a licensee.  (Am. Compl. ¶¶ 86-100, 125-29.)  Unlike the false advertising claim in Twentieth Century Fox, the significance of these allegations turns entirely upon the resolution of the underlying contract dispute between Plaintiff and FSLC.  This case is substantially similar to that described in Silverstar Enters., Inc., in that it "is essentially a contract dispute between an exclusive licensee and licensor over the right to use the trademark[s]" at issue.  The

> dispute should be determined by the principles of contract law, as it is the contract that defines the parties' relationship and provides mechanisms to redress alleged breaches thereto.  The Lanham Act, in contrast, establishes marketplace rules governing the conduct of parties not otherwise limited.  This is not a case of either the licensee or licensor attempting to protect a trademark from unscrupulous use in the marketplace by third parties.

Rather, this case involves the alleged breach of a license agreement. 537 F. Supp. at 242.  Count 6 of the Amended Complaint is therefore dismissed.

State Claims

Plaintiff has proffered no basis other than the Lanham Act for subject matter jurisdiction.  The Court declines, pursuant to 28 U.S.C. §§ 1338(b) and 1367, to exercise jurisdiction of the remaining state law claims.  See, e.g., A. H. Emery Co. v. Marcan Products Corp., 389 F.2d 11, 20-21- (2d Cir. 1968) (explaining that even when a state law unfair competition claim is joined with "substantial and related" federal trademark claims, it is within the trial court's discretion to decide whether to exercise jurisdiction pursuant to Section 1338(b)); Bridgeman Art Library, Ltd. v. Corel Corp., 25 F. Supp. 2d 421, 431 (S.D.N.Y. 1998) (holding that Section 1338 jurisdiction "is conditioned on a viable . . . trademark claim arising under United States law").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is granted in its entirety. Counts 2 and 5-9 are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Court declines to exercise jurisdiction of Plaintiff's state law causes of action. The Clerk of Court is respectfully requested to enter judgment accordingly and close this case. This Memorandum Opinion and Order resolves docket entry no. 34.

SO ORDERED.

Dated: New York, New York
July 16, 2010

_____
LAURA TAYLOR SWAIN
United States District Judge